NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1775-13T1

TIMBER GLEN PHASE III, LLC,
a New Jersey Limited Liability
Company, and JSM AT TIMBER GLEN,
LLC, a New Jersey Limited Liability
Company,

    Plaintiffs-Appellants,

v.

TOWNSHIP OF HAMILTON, a Municipal
Corporation of the State of New
Jersey,

    Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| August 6, 2015 |
| APPELLATE DIVISION |

Argued April 20, 2015 - Decided August 6, 2015

Before Judges Lihotz, St. John and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0988-12.

Ronald L. Shimanowitz argued the cause for appellants (Hutt & Shimanowitz, P.C., attorneys; Mr. Shimanowitz and Bryan D. Plocker, on the briefs).

Robert S. Sandman argued the cause for respondent (Hankin Sandman Palladino & Weintrob, attorneys; Raymond J. Went, Jr., on the brief).

Edward Purcell, Associate Counsel, argued the cause for amicus curiae New Jersey State League of Municipalities (Mr. Purcell,

attorney; William J. Kearns, Jr., of counsel; Mr. Purcell, on the brief).

Sean A. Smith argued the cause for amicus curiae New Jersey Apartment Association (Brach Eichler, LLC, attorneys; Charles X. Gormally, of counsel and on the brief; Mr. Smith, on the brief).

Robert M. Washburn argued the cause for amicus curiae New Jersey Builders Association (Flaster Greenberg, P.C., attorneys; Mr. Washburn, of counsel; Emily Breslin Markos, on the brief).

Barry S. Goodman argued the cause for amicus curiae New Jersey Realtors (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Mr. Goodman, of counsel and on the brief; Steven B. Gladis, on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

In this appeal, the parties disagree on the scope of municipal authority granted by N.J.S.A. 40:52-1 (the Licensing Act), which empowers municipalities to adopt licensing ordinances under specific circumstances. Plaintiffs Timber Glen Phase III, LLC and JSM at Timber Glen, LLC appeal from the summary judgment dismissal of their complaint in lieu of prerogative writs that challenged an ordinance adopted by defendant Township of Hamilton, assessing an annual licensing fee on residential apartment units.

On appeal, plaintiffs attack the trial judge's legal interpretation of the Licensing Act as enabling defendant's

action and, alternatively, argue the amount of the licensing fee imposed by defendant's ordinance was arbitrary, capricious and unreasonable. Several amici appeared and presented arguments favoring or opposing the authorization to exercise municipal authority.

Following our consideration of the arguments presented, viewing the evidential materials in the light most favorable to plaintiffs, Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014), we conclude the ordinance falls outside the authority granted to municipal governments under the Licensing Act. We reverse the grant of summary judgment to defendant as the licensing ordinance is ultra vires and unenforceable.

The facts are not disputed. Plaintiffs are incorporated in New Jersey and own apartment buildings in Mays Landing. In total, the buildings contain 498 units, leased for residential purposes.

Defendant adopted Ordinance No. 1708-2011 in response to the findings of its Strategic Planning Smart Growth Committee (SMART), whose task included issuing recommendations to improve the quality of life and address safety issues in the township's residential properties. SMART proposed defendant adopt an ordinance requiring annual licensing for all residential properties, specifically designed to "protect . . . tenants

[and] . . . landlords who may not have been aware of some of the activities taking place at the[ir] rental properties." SMART expressed a goal to place landlords on notice of safety and habitability issues requiring attention.

The ordinance, entitled "AN ORDINANCE OF THE TOWNSHIP OF HAMILTON, COUNTY OF ATLANTIC, REQUIRING RESIDENTIAL RENTAL UNIT LICENSES, TENANT OCCUPANCY PERMITS AND PERIODIC HABITABILITY INSPECTIONS AND RE-INSPECTIONS," mandated, among other things, the registration and licensing of apartment units starting January 1, 2012. The ordinance provided in pertinent part:

> 222-3. Residential Rental Unit License Required.
>
> Effective upon adoption of this Ordinance no person shall occupy any Residential Rental Unit nor shall the owner permit the occupancy of any[] residential rental unit within the Township of Hamilton if said unit has not been Licensed by the Bureau of Fire Prevention on forms which shall be provided for that purpose. Any owner permitting the occupancy of a Residential Rental Unit without said License 90 days after the Adoption of this ordinance shall be in violation of this ordinance, and each and every day thereafter shall be deem[ed] a separate offense.

A "Residential Rental Unit" was defined in 222-1 as:

> Any dwelling . . . which the owner rents or leases to any third party for the purposes of that third party or parties to reside in the premises for a period in excess of thirty days regardless of the term of any written or verbal lease. . . . Any room or

4

rooms, suite or a part thereof, whether furnished or unfurnished, which is occupied or intended, arranged or designed to be occupied for sleeping or dwelling purposes . . . .

Other provisions set forth in the ordinance required disclosure of names, addresses and phone numbers of all owners and mortgagees, designation of an Atlantic County agent for owners not located in the county and other unit-specific information. The license was to be renewed and the $100 per unit fee paid annually. Failure to obtain or renew the license prohibited the owner from renting the unit.

Other sections of the ordinance addressed a tenant occupancy permit, which owners were required to obtain annually for a $25 fee per unit. Finally, provisions for annual habitability inspections, which included a fire inspection, were included with a separate fee of $125.

Plaintiffs filed a complaint in lieu of prerogative writs seeking a declaratory judgment invalidating the ordinance as unconstitutional, ordering repayment of all fees collected to date, awarding attorney's fees and costs of suit and granting other relief not relevant to this appeal.

Prior to filing its answer, defendant met with plaintiffs and others affected by the ordinance. Based upon concerns raised, defendant adopted an amendment under Ordinance No. 1727-

2012, eliminating several original provisions, such as the tenant occupancy permit fee and some tenant registration requirements. A slightly reduced annual licensing fee was adopted[1] and the habitability inspection requirements were retained. The modifying ordinance also added a clause stating licensing fees were not intended as a source of municipal revenue, but rather all fees generated were designated for enforcement purposes. Defendant later adopted Ordinance No. 1752-2013, also amending the original ordinance by repealing the annual habitability inspection provisions.

The Law Division reviewed the matter on the parties' cross-motions for summary judgment. Plaintiffs argued the ordinance did not recite the enabling legislation granting defendant authority to license residential rentals, and argued it did not fall within a municipality's general police power. Further, plaintiffs asserted the Licensing Act did not allow defendant to license and regulate residential apartment buildings with leases of 175 days or more, as the clear intent of the statute was directed toward temporary or transient housing and short-term

---

[1] The $100 fee was reduced to $85. In a subsequent ordinance, the fee was altered to "an amount established by the Township Committee through [r]esolution annually as to the cost of licenses during that calendar year." At the time the matter was heard, the fee was $65 per unit per year, which would be an annual expense to plaintiffs of $32,370.

vacation rentals. Moreover, plaintiffs pointed out the regulatory ordinance did nothing more than impose another fee on apartment units, which were already regulated by the Hotel and Multiple Dwelling Act (HMDA), N.J.S.A. 55:13A-1 to -28, and local property maintenance and fire ordinances. Finally, plaintiffs asserted the ordinance burdened tenants by arbitrarily imposing the constantly changing annual fee, designed to shift municipal burdens onto landlords and tenants.[2]

Defendant challenged plaintiffs' contentions, stating the licensing ordinance was validly enacted under the regulatory legislative functions of the township and was implemented for a public purpose, that is, to aid tenants experiencing inappropriate housing conditions unabated by landlords. Defendant also cited the HMDA, which provides authority to license and inspect when a new tenancy commences. Defendant suggests the HMDA did not prohibit adoption of an ordinance for more frequent licensing, and as remedial legislation, it must be liberally construed to permit such ordinances.

The judge, in a memorandum decision accompanying the November 6, 2013 order, interpreted N.J.S.A. 40:52-1(d) and

---

[2] Plaintiffs raised additional issues before the Law Division, including constitutional challenges and a demand for attorney's fees under 42 U.S.C.A. § 1983; however, they chose not to pursue these issues on appeal.

N.J.S.A. 40:48-2.12a as authorizing defendant to license rental properties. Accordingly, he granted summary judgment to defendant and dismissed plaintiffs' complaint. This appeal followed.

Our examination of this statutory interpretation challenge presents legal questions, warranting de novo review. See Redd v. Bowman, 433 N.J. Super. 178, 187 (App. Div. 2013), certif. granted, 217 N.J. 293 (2014). We "owe no deference to the trial court . . . if [we conclude it has] wrongly interpreted a statute." Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009).

In construing the meaning of a statute, our task is well-defined: we must "determine and effectuate the Legislature's intent," examining the language used and statutory objectives to be achieved. Redd, supra, 433 N.J. Super. at 187 (citation and internal quotation marks omitted). See also N.J.S.A. 1:1-1 ("In the construction of . . . statutes[,] . . . words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature[,] . . . be given their generally accepted meaning, according to the approved usage of the language."). "'Construction of any statute necessarily begins with consideration of its plain language.'" Mun. Council v. James, 183 N.J. 361, 370 (2005) (quoting Merin v. Maglaki, 126 N.J.

430, 434 (1992)).  We give plainly written statutes their "ordinary meaning, absent a legislative intent to the contrary," with the understanding the language must be construed "in a fashion consistent with the statutory context in which it appears."  Ibid.  (citations and internal quotation marks omitted).  See also Shelton v. Restaurant.com, Inc., 214 N.J. 419, 428-29 (2013).

If our review finds the statutory provisions are ambiguous, we are free to examine extrinsic aids, such as legislative history, to ascertain the Legislature's intended meaning. Shelton, supra, 214 N.J. 429.  In interpreting two seemingly conflicting sections of the same statute, we must read the provisions in pari materia, construing them "together as a unitary and harmonious whole."  Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 80 (2006) (citations and internal quotation marks omitted).  "Every reasonable construction should be applied" to assure each section is meaningful.  Twp. of Mahwah v. Bergen Cnty. Bd. of Taxation, 98 N.J. 268, 281, cert. denied, 471 U.S. 1136, 105 S. Ct. 2677, 86 L. Ed. 2d 696 (1985). Finally, we keep in mind "every word in a statute has meaning and is not mere surplusage."  Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (citations and internal quotation marks omitted).

Guided by these rules, we examine defendant's position arguing the ordinance followed supportive enabling legislation, which authorized its imposition of licensing requirements for rental residential real estate, as well as plaintiffs' challenges to that asserted authority.

Defendant contends its licensing authority is grounded generally in a municipality's police power, and, more specifically, in subsection (d) of the Licensing Act. Defendant's view is supported by amicus New Jersey State League of Municipalities (League of Municipalities), which additionally cites the enforcement provision of the HMDA, N.J.S.A. 55:13A-21, suggesting licensure is compatible with the regulatory power over dwelling space upon termination of occupancy found in N.J.S.A. 40:48-2.12m.

Plaintiffs disagree. Their primary challenge argues defendant may only regulate apartment rentals for terms less than 175 consecutive days, as allowed by subsection (n) of the Licensing Act, because regulation of residential rentals generally rests with the State under the HMDA, unless otherwise authorized. Amici New Jersey Builders Association, New Jersey Realtors, and New Jersey Apartment Association support plaintiffs' positions.

Initially, when reviewing a municipal action, we apply a presumption of validity and reasonableness to adopted ordinances. Lake Valley Assocs., LLC v. Twp. of Pemberton, 411 N.J. Super. 501, 505 (App. Div.), certif. denied, 202 N.J. 43 (2010); see also First Peoples Bank v. Twp. of Medford, 126 N.J. 413, 418 (1991) ("[A] reviewing court should presume the validity and reasonableness of a municipal ordinance."). We do not "pass on the wisdom of the ordinance; that is exclusively a legislative function." Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 290 (2001), cert. denied, 535 U.S. 1077, 122 S. Ct. 1959, 152 L. Ed. 2d 1020 (2002). A party challenging an ordinance must demonstrate the ordinance, "in whole or in application to any particular property," is arbitrary, capricious or unreasonable. Id. at 289-90 (citation and internal quotation marks omitted). Therefore, the "presumption of validity [cannot] be overcome unless the evidence clearly establishes its unreasonableness." Twp. of Livingston v. Marchev, 85 N.J. Super. 428, 432 (App. Div. 1964) (citing Vickers v. Twp. Comm. of Gloucester Twp., 37 N.J. 232, 242 (1962)), certif. denied, 44 N.J. 412, appeal dismissed, 382 U.S. 201, 86 S. Ct. 393, 15 L. Ed. 2d 269 (1965).

The validity of local legislative action is based on the New Jersey State Constitution Article IV, section VII, paragraph 11, which states:

> The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.

See also Moyant v. Paramus, 30 N.J. 528, 534 (1959) (discussing presumptive validity of municipal ordinances). This "[h]ome rule is basic in our government" and "embodies the principle that the police power of the State may be invested in local government to enable local government to discharge its role as an arm or agency of the State and to meet other needs of the community." Inganamort v. Ft. Lee, 62 N.J. 521, 528 (1973). "Express powers as well as those that arise by fair implication are given broad latitude, so long as they are not wielded in contravention of the overarching statutory grant of authority or conflict otherwise with an express statutory limitation or prohibition." Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 625 (2004).

A-1775-13T1

The presumption of the validity of local legislative action, however, is constrained by the obvious understanding that "[a] statute has supremacy over an ordinance," In re Ordinance 04-75, 192 N.J. 446, 469 (2007), and "a local municipality is but a creature of the State, capable of exercising only those powers granted to it by the Legislature . . . ." Moyant, supra, 30 N.J. at 535. See also Dome Realty, Inc. v. Paterson, 83 N.J. 212, 225 (1980) ("[M]unicipalities, being created by the State, have no powers save those delegated to them by the Legislature and the State Constitution.").

"Whether the State alone should act or should leave the initiative and the solution to local government, rests in legislative discretion." Inganamort, supra, 62 N.J. at 528. Thus, "the Legislature may invest in local government the police power to devise measures tailored to the local scene." Ibid. (emphasis added).

When examining the municipal authority to regulate in the first instance, the Supreme Court in Inganamort instructed judicial review of an ordinance requires

> three constituent questions: (1) does the State Constitution prohibit delegation to municipalities of the power . . . ; (2) if that power may be granted, has the Legislature done so; and (3) if the State statutes vesting police power in municipalities do embrace this area, is the exercise of that power by local government

preempted or barred by reason of the existence of other statutes dealing with the subject matter.

[Id. at 527.]

The general grant defining a municipality's police power is found in N.J.S.A. 40:48-2. The statute provides:

Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

[N.J.S.A. 40:48-2.]

The Court has held this statute "authorizes a municipality to take such action as it deems necessary and proper for the purposes specified subject only to the limitation that such action not be prohibited by or inconsistent with the Constitution or the other statutes . . . ." Moyant, supra, 30 N.J. at 542 (citation and internal quotation marks omitted). However, "[n]either the constitutional nor the statutory provision is a blanket authorization to pursue the governing body's particularized notion of the public good or to legislate beyond the bestowed powers, express or implied." Repair Master,

Inc. v. Borough of Paulsboro, 352 N.J. Super. 1, 8 (App. Div. 2002).

A municipality is also granted specific authority to regulate local "buildings and structures and their use and occupation to prevent and abate conditions therein harmful to the health and safety of the occupants of said buildings and structures and the general public in the municipality." N.J.S.A. 40:48-2.12a. Specific statutes address imposing registration requirements for residences containing two or more families, N.J.S.A. 40:48-2.12c, and regulating "the maintenance and condition of any unit of dwelling space, upon termination of occupancy," N.J.S.A. 40:48-2.12m. These statutes do not authorize licensure of residential apartments.

Contrary to defendant's and the League of Municipalities' arguments, the powers to regulate and to license, although related, are discrete. See, e.g., Moyant, supra, 30 N.J. at 545 ("Registration and licensing are commonly accepted as such reasonable regulatory means . . . ." (emphasis added)). The Court addressed this distinction in Nelson Cooney & Sons v. Township of South Harrison, 57 N.J. 384 (1971):

> N.J.S.A. 40:52-1 covers a large number of business and instrumentalities used therein as the permitted subjects of municipal licenses. Essentially all are also proper subjects for police power regulatory ordinances, authorized by N.J.S.A. 40:48-1

15

> and 2. But the latter power does not include the right to require a license . . . .
>
> [Bernardsville Quarry v. Borough of Bernardsville, 129 N.J. 221, 229-30 (1992) (quoting Nelson, supra, 57 N.J. at 390 n.4).]

See also Colonial Oaks W., Inc. v. E. Brunswick, 61 N.J. 560, 572 (1972) (same).

As identified during the trial court proceedings, defendant had exercised regulatory authority over apartments. Ordinances were adopted governing inspection of apartments prior to the commencement of a new tenancy, assuring maintenance of the premises and compliance with fire safety.

Because the Legislature has specifically addressed licensing in Chapter 52 of Title 40, we reject defendant's overarching proposition suggesting the general police power regulatory authority, as found in N.J.S.A. 40:48-2 or N.J.S.A. 40:48-2.12m, encompasses the authority to license residential rental units. See Zullo v. Bd. of Health, 9 N.J. 431, 437 (1952) ("The power to license and to levy fees therefor is not inherent in local agencies exercising by delegation a portion of the State's police power and in the absence of statutory grant does not exist in a municipal corporation . . . ."). Thus, the authority granted by the State to license rental properties, which by its nature includes a revenue generating component, is

16

circumscribed by the provisions of the Licensing Act. <u>See</u>

<u>Bernardsville Quarry</u>, <u>supra</u>, 129 <u>N.J.</u> at 229 ("<u>N.J.S.A.</u> 40:52-1

is simply a grant of power allowing municipalities to use

licenses ancillary to its powers to regulate.").

The Licensing Act provides, in pertinent part:

> The governing body may make, amend, repeal and enforce ordinances to license and regulate:
>
> . . . .
>
> d. Hotels, boardinghouses, lodging and rooming houses, trailer camps and camp sites, motels, furnished and unfurnished rented housing or living units and all other places and buildings used for sleeping and lodging purposes, and the occupancy thereof, restaurants and all other eating places, and the keepers thereof;
>
> . . . .
>
> n. The rental of real property for a term less than 175 consecutive days for residential purposes by a person having a permanent place of residence elsewhere.
>
> [<u>N.J.S.A.</u> 40:52-1.]

The Legislature's primary purpose in enacting the Licensing

Act was to "authorize municipalities to license and regulate, as

police measures for the public health, safety, morals or

welfare, the local businesses described therein, and only

incidentally to impose on the businesses thus licensed and

regulated license fees for revenue which may, at least within

reasonable limits, exceed the regulatory costs." <u>Salomon v. Jersey City</u>, 12 <u>N.J.</u> 379, 390 (1953). Therefore, a municipality's exercised licensing authority "cannot be an arbitrary exertion of th[at] power," <u>Ring v. N. Arlington</u>, 136 <u>N.J.L.</u> 494, 497 (Sup. Ct.), <u>aff'd o.b.</u>, 1 <u>N.J.</u> 24 (1948), nor can the exercise be unreasonable, <u>Indep. Warehouses v. Scheele</u>, 134 <u>N.J.L.</u> 133, 136 (E. & A. 1946), <u>aff'd</u>, 331 <u>U.S.</u> 70, 67 <u>S. Ct.</u> 1062, 91 <u>L. Ed.</u> 1346 (1947).

In this matter, the parties' primary positions interpreting the Licensing Act can be summed up as follows: defendant argues the broad language in subsection (d) encompasses any form of licensure of rental residences as apartments fall within "furnished and unfurnished rented housing or living units." Plaintiffs, on the other hand, reject this sweeping interpretation, suggesting subsection (d) applies only to temporary residential uses, drawing support from subsection (n), which permits licensing authority over short-term residential rentals, not more permanent dwellings. Plaintiffs argue if authority to license residential real estate is included within subsection (d), subsection (n) is rendered superfluous.

On its face, the statute appears to contain an ambiguity, as the provisions of subsection (d) (directed to "furnished and unfurnished <u>rented housing or living units</u> and all other places

and buildings used for sleeping and lodging purposes, <u>and the occupancy</u> thereof") would appear to include the subject of subsection (n) (governing "[<u>t</u>]<u>he rental of real property for a term less than 175 consecutive days for residential purposes</u> by a person having a permanent place of residence elsewhere") <u>N.J.S.A.</u> 40:52-1(d), (n) (emphasis added).

"Applying traditional principles of statutory construction, we look to the legislative history to aid in determining the legislative intent of a statute whose plain language is subject to more than one reasonable interpretation." <u>United Parcel Serv. Gen. Servs. Co. v. Dir., Div. of Taxation</u>, 220 <u>N.J.</u> 90, 94 (2014) (citation and internal quotation marks omitted). <u>See also</u> <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492-93 (2005) ("[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" (quoting <u>Cherry Hill Manor Assocs. v. Faugno</u>, 182 <u>N.J.</u> 64, 75 (2004))).

Subsection (d) as originally adopted provided municipal licensing of "[h]otels, boarding houses, lodging and rooming houses, and all other places and buildings used for sleeping and lodging purposes, restaurants and all other eating places, and the keepers thereof . . . ." <u>L.</u> 1941, <u>c.</u> 92. Thereafter the

statute was amended, largely in response to judicial interpretations.

By 1948, "trailer camps and camp sites" were added. L. 1948, c. 425. See Edwards v. Mayor & Council of Moonachie, 3 N.J. 17, 23 (1949) (concluding "[t]railer camps and camp sites, in the view of the ordinance, comprise 'places' used for 'sleeping and lodging purposes'" governed by the statute).

The next amendment came on the heels of the Court's denial of certification of this court's affirmance of a trial judge's rejection of the scope of subsection (d) to include licensing apartments. In Boulevard Apartments, Inc. v. Hasbrouck Heights, 86 N.J. Super. 189 (Law Div. 1965), aff'd o.b., 90 N.J. Super. 242 (App. Div.), certif. denied, 47 N.J. 239 (1966), the Law Division held:

> We do not consider an apartment house to be in the same general or specific class as a hotel, boarding house, lodging or rooming house. These are commercial businesses requiring regulation for the safety, health and morals of the community. An apartment house, where unfurnished apartments are rented for a term, without overnight or transient business, is in the same category as a private or two- or three-family residence.
>
> . . . .
>
> We are cognizant that the statute, N.J.S.A. 40:52-1(d), contains the words "all other places and buildings used for sleeping

A-1775-13T1

and lodging purposes."  We do not consider apartment houses to be in that category.

> [<u>Id.</u> at 193-94.]

Thereafter, subsection (d) was amended to add "motels, furnished and unfurnished rented housing or living units . . . and the occupancy thereof."  <u>L.</u> 1968, <u>c.</u> 296.

In 1998, subsections (m), relating to rental of commercial property, and (n), relating to residential rentals, were added. <u>L.</u> 1997, <u>c.</u> 317.  A legislative statement attached to the bill when introduced, adding this new subsection, stated:

> This bill would limit the authority of a municipality to license the rental of commercial and residential real property to leases of less than 125 days.  Under current law, a municipality has the authority to regulate all leases.  This bill would effectively limit that authority to seasonal leases, such as weekly rentals in shore municipalities.
>
> [<u>Ibid.</u>]

The proposal was altered by the Senate Community Affairs Committee, increasing 125 to 175 days.  The amendment as adopted did not make changes to subsection (d).

Since the 1998 amendment, few opportunities have been presented for judicial review of these statutory provisions.[3]

---

[3]    In <u>Lake Valley</u>, a municipal ordinance imposing licensing and inspection requirements upon a change in tenancy of residential rentals was upheld upon a finding the State did not

(continued)

Importantly, none of those cases considered the issue now before the court.

Obligated as we are to "seek an interpretation that will make the most consistent whole of the statute," In re Registrant N.B., __ N.J. __, __ (2015) (slip op. at 28) (citations and internal quotation marks omitted), we determine the bill statement accompanying the 1998 amendment serves as powerful evidence of the objectives and intentions of the Legislature with respect to licensing residential rentals. We conclude municipalities are not authorized to issue ordinances imposing licenses for apartment units which provide tenancies of 175 days or more.

Aligned with the maxim "expressio unius est exclusio alterius," which means the inclusion of one excludes the other, DiProspero, supra, 183 N.J. at 495, we understand the very specific addition of subsection (n), which limits licensure to

_____

(continued)
preempt the area by enacting the HMDA. Lake Valley, supra, 411 N.J. Super. at 505-07. Licensing authority was not examined. See ibid. Similarly, in Repair Master, this court struck down an ordinance regulating the nature of occupancy of rental property; however, the issue of licensing authority was neither challenged nor reviewed. Repair Master, supra, 352 N.J. Super. at 14. Finally, in United Property Owners Association of Belmar v. Borough of Belmar, 343 N.J. Super. 1, 32 (App. Div.), certif. denied, 170 N.J. 390 (2001), we upheld the scope of an ordinance regulating summer beach rentals, based on legislative authority, including N.J.S.A. 40:52-1(n).

residential rentals of "less than 175 consecutive days," precludes licensure of residential rentals for 175 days or more. Further, the Legislature's addition of this discrete provision, expressly limiting licenses to "rental of real property for a term less than 175 consecutive days for residential purposes by a person having a permanent place of residence elsewhere," must be considered purposeful and made while cognizant of subsection (d) because "[a] legislative body in this State is presumed to be familiar . . . with the statutory law of the State . . . ." Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 350 (1953). The bill's interpretative statement reinforces this view and reflects an explicit intent to limit municipal licensing authority "to seasonal leases" and, therefore, assures the full meaning of all statutory provisions. See Jersey Cent. Power & Light, supra, 212 N.J. at 587 (stating a court must assume legislative enactments do not use "any unnecessary or meaningless language" (citation and internal quotation marks omitted)).

The trial judge did not mention the language or impact of subsection (n) when rendering his decision. However, we find this provision critical to the overall understanding of the scope of statutory authority. Reading the whole of the statute, we conclude the addition of a separate section directed to

short-term or seasonal residential leases suggests temporal implications when considering the meaning of "furnished and unfurnished rental units" described in subsection (d). This is especially true because the other arrangements mentioned in subsection (d) refer to short-term living (e.g., motels, hotels, boardinghouses, rooming houses and camp sites). Reading these two provisions in this way reconciles the Legislature's decision not to amend subsection (d) when adding subsection (n). See Shelton, supra, 214 N.J. at 440 ("Words in a statute should not be read in isolation.")

We cannot agree with defendant and the League of Municipalities that subsection (n) merely provides another type of rental housing subject to licensure or was limited to rentals in resort communities. The interpretative statement to the 1998 amendment refutes these assertions. Were defendant's view correct, a clarification in (d) would have been sufficient. Instead, we conclude the addition of (n) was designed and significant as it reflects a specific intent to limit licensing of residential rentals, which were viewed differently from the living arrangements listed in subsection (d).

As we stated above, licensing is a distinct function authorized by N.J.S.A. 40:52-1. We conclude the Legislature chose to limit municipal licensing authority to short-term lease

arrangements. If that interpretation is incorrect, the Legislature will act to provide further clarification.

Therefore, defendant may not mandate by ordinance licensure of residential rentals for 175 days or more, accompanied by an annual licensing fee. The ordinance mandating this licensure is invalid as ultra vires and unenforceable.[4]

We choose not to address plaintiffs' alternative argument, as we conclude it is moot. Comando v. Nuqiel, 436 N.J. Super. 203, 219 (App. Div. 2014) (declining discussion of issue when controversy is concluded).

We vacate the summary judgment dismissal of plaintiffs' complaint and reverse the order upholding defendant's licensing ordinance. We remand this matter to the Law Division for further proceedings as necessitated by our opinion. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Our opinion is confined to the authority to license and does not address defendant's regulatory or inspection authority granted by other statutes designed to assure rental premises remain safe, building and fire code compliant and structurally sound. See Devine v. Mantua Twp., 28 N.J. Super. 299, 305 (Law Div. 1953).