NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0654-14T1

WOLVERINE FLAGSHIP FUND TRADING
LIMITED, WHITEBOX CONCENTRATED
CONVERTIBLE ARBITRAGE PARTNERS,
L.P., WHITEBOX MULTI-STRATEGY
PARTNERS, L.P. and PANDORA
SELECT PARTNERS, L.P.,

    Plaintiffs-Appellants,

v.

AMERICAN ORIENTAL BIOENGINEERING,
INC., AOXING PHARMACEUTICAL COMPANY,
INC. and OLDE MONMOUTH STOCK TRANSFER
CO., INC.,

    Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| March 11, 2016 |
| APPELLATE DIVISION |

_____

Argued November 4, 2015 — Decided March 11, 2016

Before Judges Yannotti, St. John and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-275-13.

Michael T. Hensley argued the cause for appellants (Bressler, Amery & Ross, attorneys; Mr. Hensley and Lauren Fenton-Valdivia, on the brief).

Respondents have not filed a brief.

The opinion of the court was delivered by

ST. JOHN, J.A.D.

Plaintiffs, Wolverine Flagship Fund Trading Limited, a Cayman Islands corporation, Whitebox Concentrated Convertible Arbitrage Partners, L.P., a British Virgin Islands Limited Partnership, Whitebox Multi-Strategy Partners, L.P., a British Virgin Islands Limited Partnership, and Pandora Select Partners, L.P., a British Virgin Islands Limited Partnership (collectively plaintiffs), appeal from the Chancery Division's order denying injunctive relief. We affirm.

I.

Plaintiffs contend that they collectively own $19,210,000 in outstanding principal amount of 5.00% convertible senior notes (the notes), issued by defendant American Oriental Bioengineering, Inc. (AOB), a Nevada corporation. The notes were issued pursuant to an Indenture between AOB and Wells Fargo Bank, National Association as trustee, dated July 15, 2008 (the Indenture). Pursuant to the Indenture, payment of the notes was an unconditional obligation of AOB, and the notes would mature in 2015. However, the notes were not secured by any collateral and Section 11.11 of the Indenture provided, "[n]othing in this Indenture or in the [notes], expressed or implied, shall be construed to constitute a security interest under the Uniform

Commercial code or similar legislation . . . in any jurisdiction."

In 2013, plaintiffs brought suit in the Law Division, Docket No. ESX-L-275-13, against AOB asserting that it was in default under the Indenture for non-payment of the notes and other covenant defaults. AOB did not defend that action, and on August 13, 2013, a $21,096,347.81 default final judgment was entered against it. Following entry of the judgment, plaintiffs discovered that the only significant asset held by AOB was a 33.7% interest in Aoxing Pharmaceutical Company, Inc. (Aoxing) held in certificate form. Aoxing is a Florida corporation with its headquarters in Jersey City. Olde Monmouth Stock Transfer Co., Inc. is the stock transfer agent for Aoxing.

On December 3, 2013, plaintiffs filed a complaint in the Chancery Division against AOB, Aoxing, and Olde Monmouth. The complaint sought an injunction ordering Olde Monmouth and Aoxing to cancel the certificated shares held by AOB, reissue them in defendant's name, and deliver them into the actual possession of the sheriff for execution. Plaintiffs allege that the certificates are being held in the People's Republic of China.

Neither AOB nor Aoxing defended the suit. The only action taken by Olde Monmouth was its accession to a consent order

enjoining it from "transferring, canceling, amending or in any way disposing of the Shares" until otherwise ordered.

On August 22, 2014, the judge issued an order denying plaintiffs' requested injunction, but reaffirming the earlier consent order and order of default. It is from that August 22, 2014 order that plaintiffs appeal.

## II.

On appeal, plaintiffs argue that the Chancery Division incorrectly interpreted Uniform Commercial Code (UCC) 8-112, as adopted by this state at N.J.S.A. 12A:8-112, to require actual seizure of certificated shares owned by a debtor before a creditor can reach the debtor's interest in those certificated shares. Having reviewed the arguments in light of the applicable law, we affirm the order of the Chancery Division.

A trial court's interpretation of a pertinent statute concerns questions of law. See Chase Bank USA, N.A. v. Staffenberg, 419 N.J. Super. 386, 396 (App. Div. 2011). We therefore review such a determination de novo. See, e.g., Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In 1997, New Jersey adopted the UCC rules concerning the process by which a creditor can reach certificated securities

owned by a debtor. <u>See</u> L. 1997, c. 252. UCC 8-112 was codified

as <u>N.J.S.A.</u> 12A:8-112, which provides in pertinent part:

> a. The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in subsection d. of this section. However, a certificated security for which the certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer.
>
> . . . .
>
> d. The interest of a debtor in a certificated security for which the certificate is in the possession of a secured party, or in an uncertificated security registered in the name of a secured party, or a security entitlement maintained in the name of a secured party, may be reached by a creditor by legal process upon the secured party.
>
> e. A creditor whose debtor is the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

"Our primary goal in interpreting a statute is to determine

the Legislature's intent." <u>In re Raymour and Flanigan</u>

<u>Furniture</u>, 405 <u>N.J. Super.</u> 367, 381 (App. Div. 2009).

Generally, the language of the statute is the best indicator of

the legislature's intent.  See DiProspero v. Penn, 183 N.J. 477, 492 (2005).  "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted).  We only look to extrinsic evidence "if there is ambiguity in the statutory language that leads to more than one plausible interpretation."  Ibid.

Subsection (a) of N.J.S.A. 12A:8-112 does not, on its face, present any ambiguities.  The subsection consists of a general rule and two exceptions.  The general rule is that "a certificated security may be reached by a creditor only by actual seizure of the security certificate."  N.J.S.A. 12A:8-112(a).  The two exceptions apply where the certificate has been surrendered by the debtor to the issuer, or "as otherwise provided in subsection d."  Ibid.

Common sense dictates that the Legislature's use of the restrictive term "only" in stating the general rule, followed by the naming of two exceptions, implies that the two exceptions named are the only exceptions applicable to the subsection. This interpretation is also consistent with the maxim expressio unius est exclusio alterius, which stands for the proposition that explicitly naming one or more things implies the exclusion

of all other things.  See Evans v. Atlantic City Bd. of Educ.,
404 N.J. Super. 87, 92 (App. Div. 2008).

Plaintiffs contend that subsection (e) of N.J.S.A. 12A:8-112 is properly interpreted to permit the use of any means "allowed at law or in equity" to satisfy a claim.  In support of this argument, plaintiffs point out that subsection (e) contains a disjunctive phrase, entitling a creditor to the aid of the court "in reaching the certificated security . . . or in satisfying the claim in regard to property that cannot readily be reached . . . ."  N.J.S.A. 12A:8-112(e) (emphasis added).  From this, plaintiffs argue that section (e) requires the court to use its broad equitable powers in two distinct situations: either to reach a certificated security, or alternatively, when a certificated security cannot be reached.

This interpretation would make subsection (e) function as an additional (and very broad) exception to the possession requirement in subsection (a).  Indeed, under such an interpretation, the exception contained in (e) would swallow the general rule set forth in (a).

When two sections of a statute appear to conflict with each other, "we must read the provisions in pari materia, construing them 'together as a unitary and harmonious whole.'"  Timber Glen Phase III, LLC v. Township of Hamilton, 441 N.J. Super. 514, 522

(App. Div. 2015) (quoting Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 80 (2006)). "'Every reasonable construction should be applied' to assure each section is meaningful." Ibid. (internal quotation marks omitted) (quoting Twp. of Mahwah v. Bergen Cnty. Bd. of Taxation, 98 N.J. 268, 281 (1985), cert. denied, 471 U.S. 1136, 105 S. Ct. 2677, 86 L. Ed. 2d 696 (1985)). In light of this principle, the broad equitable and legal remedies permitted under subsection (e) should stop short of any remedy that circumvents the actual seizure requirement of subsection (a).

This approach is similar to the interpretation adopted by the Eleventh Circuit in First National Bank v. Dyes, 638 S.W. 2d 957, 958 (1982). In that case, plaintiff obtained a judgment against her ex-husband for 600 certificated shares in the Dr. Pepper Company. Ibid. Plaintiff's husband never transferred the shares. Ibid. The district court looked to section 8.317 of the Texas Business and Commercial Code,[1] and in particular, to

---

[1] The statute, which has since been repealed, followed the Uniform Stock Transfer Act and read as follows:

> (a) No attachment or levy upon a security or any share or other interest evidenced thereby which is outstanding shall be valid until the security is actually seized by the officer making the attachment or levy but a security which has been surrendered to the

(continued)

the second subsection, entitling a creditor to "such aid . . . as is allowed at law or in equity." Id. at 959-60. Consequently, the district court ordered the Dr. Pepper Company and First National Bank to cancel defendant's certificated shares, and reissue them in plaintiff's name. Id. at 958.

The Eleventh Circuit reversed, holding the statute "affords a creditor a means of gaining control of a certificate or other security from the owner or holder thereof, not the issuer." Id. at 959. The court noted the purpose of the seizure requirement is to prevent the fraudulent transfer of cancelled certificates, and held that the statute "provides no right to the issuance of a new certificate when the old one cannot be reached." Ibid.

Similarly, in Detox Industries, Inc. v. Gullet, a judgment debtor placed his only asset, certificated shares of Detox

---

(continued)

> issuer may be attached or levied upon at the source.
>
> (b) A creditor, whose debtor is the owner of a security shall be entitled to such aid from courts of appropriate jurisdiction, by injunction or otherwise, in reaching such security or in satisfying the claim by means thereof as is allowed at law or in equity in regard to property which cannot readily be attached or levied upon by ordinary legal process.
>
> [Tex. Bus. & Com. Code. § 8.317 (1968), repealed Sept. 1, 1995.]

A-0654-14T1

Industries, in the hands of his son. 770 S.W. 2d 954, 955 (Tex. App. 1989). The son, in turn, took the shares outside the state, and could not be located. Ibid. The trial court ordered Detox Industries to cancel defendant's shares and reissue new shares in the name of the receiver. A Texas appellate court reversed, holding that a turnover order can only be issued against the debtor, or a third party, that is in actual possession of the certificates. Id. at 958.

Plaintiffs rely upon two published cases in support of their argument. First, plaintiffs cite the Second Circuit Court of Appeals in Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152, 155 (2d Cir. 1977), cert. denied, 434 U.S. 1046, 98 S. Ct. 892, 54 L. Ed. 2d 798 (1978), for the proposition that subsection N.J.S.A. 12A:8-112(e) acts as a further exception to the seizure requirement in subsection (a). However, in that case, the trial court actually only enjoined the debtor to turn over certificated securities to the sheriff for execution. Ibid. This is consistent with a narrow interpretation of subsection (e), and does not support the proposition that the court can reissue the certificated shares owned by a debtor.

Plaintiffs also cite House v. Williams, 573 So. 2d 1012 (Fla. Dist. Ct. App. 5th Dist. 1991), in which a judgment creditor sought to attach a debtor's certificated shares in a

privately-held, family-owned company.  Id. at 1012-13.  The defendant in that case claimed he did not know where the certificates were located.  Ibid.  Consequently, the court ordered the corporation to issue new certificates in defendant's name, and deliver them to the sheriff for execution.  Ibid.  An appellate court upheld the order without explaining its reasoning.  Ibid.  The court's omission of any explanation or analysis seriously limits the persuasiveness of the opinion.

Lastly, plaintiffs argue concern for public policy and justice demands reversal.  We agree that, by affirming the chancery court's order in this case, plaintiffs would be foreclosed from pursuing one avenue of recovery for a substantial debt.  However, the policy considerations in this case cut both ways.  The purpose of the actual seizure requirement in N.J.S.A. 12A:8-112 is to prevent fraudulent transfers of cancelled stock certificates to innocent third parties.  This is illustrated by a comment to N.J.S.A. 12A:8-112:

> In dealing with certificated securities the instrument itself is the vital thing, and therefore a valid levy cannot be made unless all possibility of the certificate's wrongfully finding its way into a transferee's hands has been removed.  This can be accomplished only when the certificate is in the possession of a public officer, the issuer, or an independent third party.  A debtor who has been enjoined can

> still transfer the security in contempt of court. Therefore, although injunctive relief is provided in subsection (e) so that creditors may use this method to gain control of the certificated security, the security certificate itself must be reached to constitute a proper levy whenever the debtor has possession.
>
> [N.J.S.A. 12A:8-112 cmt. 1 (citation omitted).]

Plaintiffs maintain that this rationale dates from the pre-internet age, and that potential buyers of cancelled certificates can be put on record notice by publishing advisory notices on the internet. However, N.J.S.A. 12A:8-112 was adopted in 1997, thus plaintiffs' contention that the Legislature could not have comprehended the usefulness of the internet in providing record notice is dubious. See N.J.S.A. 12A:8-112. Furthermore, we have neither the authority to enact such a notice requirement, nor the expertise to determine the sufficiency of such a requirement. See Roman Check Cashing v. N.J. Dep't of Banking & Ins., 169 N.J. 105, 111 (2001).

In sum, we conclude that the Chancery Division judge correctly found that, under N.J.S.A. 2A:8-112(a), actual seizure of certificated shares is required before a creditor may reach a debtor's interest in those shares.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                                          A-0654-14T1