[Cite as *Huntington Natl. Bank v. Bywood Inc.*, 2017-Ohio-2829.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Huntington National Bank, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 16AP-358 |
| | | (C.P.C. No. 12CV-1129) |
| Bywood, Inc., | : | |
| Defendant-Appellee, | : | (ACCELERATED CALENDAR) |
| (Ashraf Ettayem, | : | |
| Defendant-Appellant). | : | |

NUNC PRO TUNC[1]
D E C I S I O N

Rendered on May 16, 2017

**On brief:** *Thomas R. Merry* and *Beth M. Miller*, for plaintiff-appellee. **Argued:** *Beth M. Miller*.

**On brief:** *Ashraf A. Ettayem*, pro se. **Argued:** *Ashraf Ettayem*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Ashraf Ettayem, appeals a judgment of the Franklin County Court of Common Pleas that aided plaintiff-appellee, The Huntington National Bank ("Huntington"), in the execution of a judgment against Ettayem. Ettayem also

---

[1] This decision replaces, nunc pro tunc, the original decision released on May 9, 2017, and is effective as of that date, to reflect a change in the date referenced in paragraph 13 from February 11, 2016 to April 7, 2016.

challenges the trial court's ruling that he admitted the matters contained within Huntington's requests for admissions when he failed to timely respond to those requests. For the following reasons, we affirm in part and reverse in part the judgment aiding in the execution of a prior judgment. Because the trial court lacked the jurisdiction necessary to enter the judgment deeming the discovery requests admitted, we conclude that that judgment is void and a nullity.

{¶ 2}  On January 27, 2012, Huntington filed suit against Bywood, Inc. and Ettayem.  In its complaint, Huntington alleged that it had extended to Bywood a business credit line loan and a business overdraft protection loan, and that Bywood had breached the terms of the contracts governing those loans.  Additionally, Huntington alleged that Ettayem had executed and delivered to Huntington a guaranty covering both loans. Huntington sought judgment against Bywood and Ettayem for the amounts due on both loans.

{¶ 3}  Ultimately, the trial court granted Huntington summary judgment on its claims.  In a judgment dated November 20, 2012, the trial court awarded Huntington damages in the amount of $56,537.96, plus interest, late fees, and charges.  Bywood and Huntington appealed the November 30, 2012 judgment to this court, and we affirmed it. *Huntington Natl. Bank v. Bywood, Inc.*, 10th Dist. No. 12AP-994, 2013-Ohio-2780, ¶ 1, 11.

{¶ 4}  Huntington conducted debtor examinations of Ettayem on March 14, 2014 and May 1, 2015.  During those examinations, Ettayem testified regarding The Limited Investment Group Corp. ("Limited"), a business that Ettayem incorporated in 2003. Ettayem explained that he served as Limited's president and chief executive officer. Limited employed no other officers and had no directors.

{¶ 5}  According to Ettayem, he owned 100 percent of the stock that Limited issued.  Although a stock certificate for Ettayem's Limited shares existed, Ettayem did not have physical possession of it.  To Ettayem's knowledge, the stock certificate was located in the business office of a commercial building that Limited had previously owned on Central Avenue.  However, that building had been sold in July 2012 by a receiver appointed by the Franklin County Court of Common Pleas.  Prior to the sale, the receiver

had inspected the Central Avenue building's business office, but he did not find any Limited stock certificates.

{¶ 6} Huntington used the information it had collected regarding Ettayem's ownership of Limited stock to file an ex parte motion in aid of execution of its November 20, 2012 judgment. Specifically, Huntington moved the trial court to (1) prohibit Ettayem from transferring, selling, or pledging his shares of stock in Limited and (2) issue a replacement stock certificate for Ettayem's Limited shares and turn that certificate over to the Franklin County Sheriff for levy and sale. The trial court granted Huntington's motion in a judgment entered April 8, 2016.

{¶ 7} When Huntington sought the trial court's aid in execution of its judgment, Huntington raised with the trial court the parties' ongoing controversy over discovery. In December 2016, Huntington served upon Ettayem interrogatories, requests for admission, and requests for the production of documents. Ettayem objected to the discovery requests and moved to strike them. The trial court denied Ettayem's objections and motion to strike in an entry dated February 11, 2016. Ettayem appealed that denial by filing a timely notice of appeal. Despite the pendency of the appeal, Huntington asked the trial court to enter an order deeming admitted the matters contained in Huntington's requests for admission. On April 7, 2016, the trial court entered the order Huntington requested.[2]

{¶ 8} Ettayem now appeals the trial court's April 7 and 8 judgments, and he assigns the following errors:

> [1.] THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S **ORAL** MOTION IN [AN] EX-PARTE PROCEEDING TO HAVE ITS FIRST REQUESTS FOR ADMISSION TO DEFENDANT ASHRAF ETTAYEM DEEMED ADMITTED.
>
> [2.] THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION IN [AN] EX-PARTE PROCEEDING IN AID OF EXECUTION UPON JUDGMENT FOR AN ORDER: 1- PROHIBITING THE TRANSFER, SALE, OR PLEDGE OF [THE] STOCK CERTIFICATE **AND** 2- AUTHORIZING ISSUANCE OF [A] REPLACEMENT STOCK

---

[2] On April 17, 2016, Ettayem filed a motion to voluntarily dismiss his appeal of the denial of his objections and motion to strike. We entered a journal entry granting the dismissal of the appeal on April 19, 2016.

CERTIFICATE BY [THE] COURT FOR TURNOVER TO THE
FRANKLIN COUNTY SHERIFF[.]

(Emphasis sic.)

{¶ 9}   By his first assignment of error, Ettayem argues that the trial court lacked the jurisdiction necessary to enter its April 7, 2016 order deeming admitted the matters contained in Huntington's requests for admission.  We agree.

{¶ 10} " '[O]nce an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.' "  *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, ¶ 13, quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, ¶ 8.  Thus, generally, the timely filing of a notice of appeal precludes a trial court from issuing further orders affecting matters at issue in the appeal.  *Horvath v. Packo*, 6th Dist. No. L-11-1318, 2013-Ohio-56, ¶ 45; *see Electronic Classroom of Tomorrow* at ¶ 14 (holding that the trial court lacked the authority to enter final judgment on those claims implicated in the order challenged and issue raised in the appeal); *Whipps v. Ryan*, 10th Dist. No. 14AP-67, 2014-Ohio-5302, ¶ 42 (holding that the trial court lacked jurisdiction to entertain a motion that raised issues subject to determination by the appellate court in an earlier filed appeal).  "When a trial court acts beyond its jurisdiction while an appeal is pending, its order is void."  *Kitson v. Gordon Food Serv.*, 9th Dist. No. 15CA0078-M, 2016-Ohio-7079, ¶ 6.  A void judgment is a nullity.  *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, paragraph two of the syllabus, ¶ 46.

{¶ 11} Here, Ettayem appealed the February 11, 2016 order overruling his objections to Huntington's discovery and denying his motion to strike that discovery.  Once Ettayem perfected his appeal of that order, the trial court lost its authority to take any further action regarding the disputed discovery requests because that matter was within our jurisdiction on review.  By issuing its April 7, 2016 ruling deeming the requests for admission admitted, the trial court necessarily assumed that the requests were valid.  The jurisdiction to consider and determine that question, however, had passed to this court with the filing of the appeal from the February 11, 2016 order.  Thus, the pendency

of the appeal divested the trial court of the jurisdiction necessary for it to issue its April 7, 2016 order. That order, therefore, is void.

{¶ 12} Huntington argues that the February 11, 2016 order was not a final, appealable order and, consequently, Ettayem's appeal of that order did not divest the trial court of jurisdiction to act during the pendency of the appeal. The Supreme Court of Ohio has rejected this argument. That court has held that "[a] trial court judge's opinion that the order appealed from is not a final, appealable order does not alter the fact that the filing of the notice of appeal divests the trial court of jurisdiction to proceed with the adjudication during the pendency of the appeal." *Electronic Classroom of Tomorrow* at ¶ 16. Moreover, a court of appeals' ultimate determination that the appealed order is not a final, appealable order does not retroactively sanction a trial court's action on appealed matters during the pendency of the appeal. *Id.* Thus, once a party perfects an appeal of a journalized order, the trial court loses jurisdiction over matters inconsistent with the reviewing court's consideration and determination of the appeal, regardless of whether the order appealed is actually a final, appealable order. *Brannon v. Persons*, 2d Dist. No. 27266, 2016-Ohio-8591, ¶ 4; *Horvath* at ¶ 30.

{¶ 13} As a final matter, we recognize that our resolution of this assignment of error may ultimately have little practical impact. Civ.R. 36(A)(1) is self-executing; absent a timely answer or objection, a matter is admitted without the necessity of a court order. *Samaan v. Walker*, 10th Dist. No. 07AP-767, 2008-Ohio-5370, ¶ 8; *Farah v. Chatman*, 10th Dist. No. 06AP-502, 2007-Ohio-697, ¶ 10. Nevertheless, a court order that deems matters admitted remains a court order, regardless of its redundancy, and a trial court must possess jurisdiction to enter such an order. Because the trial court lacked the necessary jurisdiction in this case, its April 7, 2016 order is void and, thus, a nullity.

{¶ 14} Void judgments do not constitute final, appealable orders. *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, ¶ 36. If an order is not final, then a court of appeals has no jurisdiction to review it. *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, ¶ 14. As the February 11, 2016 order is void, we lack jurisdiction over it, and we thus dismiss Ettayem's first assignment of error.

{¶ 15} By his second assignment of error, Ettayem argues that the trial court erred in granting Huntington's motion seeking aid in the execution of the November 20, 2012

judgment. In granting Huntington's motion, the trial court: (1) prohibited Ettayem, acting individually and as a Limited corporate officer, from transferring, issuing, selling, pledging, encumbering, or otherwise disposing of any shares of Limited stock, and (2) issued a new Limited stock certificate to replace the original stock certificate that Limited had executed and delivered to Ettayem. On appeal, Ettayem presents no legal argument challenging the trial court's prohibition regarding the Limited stock. Consequently, we overrule the second assignment of error to the extent that it alleges error in that prohibition. We thus turn to Ettayem's primary appellate argument: the trial court erred in issuing a new Limited stock certificate.

{¶ 16} Huntington asked the trial court to issue a new stock certificate so that Huntington could execute upon it, affect the stock certificate's sale, and use the proceeds to satisfy the outstanding judgment against Ettayem. Huntington relied on R.C. 1308.32 to achieve its purpose. In R.C. 1308.32, Ohio has adopted Uniform Commercial Code ("UCC") 8-112, which specifies the methods by which a creditor may reach a certificated security owned by a debtor. *Domo v. Boulder Bluff Corp.*, 6th Dist. No. 92OT065 (Dec. 17, 1993). In relevant part, R.C. 1308.32 states:

> (A) The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in division (D) of this section. However, a certificated security for which the certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer.
>
> * * *
>
> (D) The interest of a debtor in a certificated security for which the certificate is in the possession of a secured party * * * may be reached by a creditor by legal process upon the secured party.
>
> (E) A creditor whose debtor is the owner of a certificated security * * * is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security * * * or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

{¶ 17} R.C. 1308.32, thus, creates a general rule and two exceptions governing execution against a certificated security. Under the general rule, for a creditor to reach a debtor's interest in a stock certificate, actual seizure of the stock certificate must occur. *Domo*; *accord Hastings v. Furr*, 177 B.R. 723, 727 (S.D.Fla.1995) (interpreting Florida's version of former UCC 8-317 (a similarly worded predecessor to UCC 8-112) and holding that "[c]ertificated securities must be actually seized to perfect a creditor's lien against a debtor's certificated securities"); *Wolverine Flagship Fund Trading Ltd. v. American Oriental Bioengineering, Inc.*, 444 N.J.Super. 530, 535 (2016) (construing New Jersey's version of UCC 8-112); *Ho v. Hsieh*, 181 Cal.App.4th 337, 345 (2010) (construing California's version of UCC 8-112). However, a creditor may instead secure an interest in the debtor's stock certificate through ordinary legal process (1) on the issuing corporation, where the stock certificate has been surrendered to that corporation or (2) on a secured party in possession of the stock certificate, where the debtor has transferred the certificate to another party to secure a debt. *Wolverine Flagship Fund Trading Ltd.* at 535; *Ho* at 345; *accord Domo* ("When certificated securities are in the hands of a secured party, '* * * an effective lien can be established by service on the secured party * * *.' ").

{¶ 18} Initially, Ettayem argues that the evidence establishes that the second exception applies here. Ettayem is mistaken. Although Ettayem stated that he has "borrowed repeatedly against [his] stocks in the business [he] own[s]," Ettayem did not testify that he transferred his Limited stock certificate to a secured lender. (Mar. 14, 2014 Tr. at 40). Therefore, the general rule controlled here and required actual seizure of Ettayem's Limited stock certificate.

{¶ 19} Huntington, however, faced a major obstacle in accomplishing the actual seizure of the Limited stock certificate: Ettayem apparently lost it. While Ettayem never explicitly testified that he had lost the Limited stock certificate, the evidence supports that conclusion. Ettayem admitted during the March 14, 2014 debtor examination that he did not then possess the Limited stock certificate, but "it should be there at the Central Avenue location." *Id.* at 39. However, the receiver appointed to sell the Central Avenue building inspected the building prior to the sale and did not find a Limited stock certificate. Ettayem, therefore, lost his Limited stock certificate.

{¶ 20} Practically, a stock certificate that cannot be found cannot be seized. Pursuant to R.C. 1308.32(A), a stock certificate that cannot be seized cannot be sold to pay the owner's debt. Huntington, however, turned to R.C. 1308.32(E) to engineer a solution to the problem presented by the lost stock certificate. R.C. 1308.32(E) provides that a creditor whose debtor is the owner of a certificated security "is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, * * * in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." Relying on R.C. 1308.32(E), Huntington asked the trial court to issue a stock certificate to replace Ettayem's lost Limited stock certificate. Once the trial court created a new Limited stock certificate, Huntington could effectuate the actual seizure of that certificate, thus satisfying R.C. 1308.32(A).

{¶ 21} R.C. 1308.32(E) "simply makes clear that a creditor [seeking to reach a certificated security] is entitled to appropriate aid from courts of competent jurisdiction, a proposition that would surely follow from other state law even in [division (E)]'s absence." 7A Hawkland, *Uniform Commercial Code Series*, Section 8-112:01 [Rev.] (2007 Cumulative Supplement). In other words, R.C. 1308.32(E) does not endow a court with any new, additional authority, but rather, merely affirms the extension of a court's existing authority to aid in the execution of judgments to executions against certificated securities. 8 Lawrence, *Anderson on the Uniform Commercial Code*, Section [Rev] 8-112:11 (3d Ed.1996).

{¶ 22} Ettayem argues that Huntington's reliance on R.C. 1308.32(E) was not proper. To address this argument, we must analyze whether Ohio law permits a trial court to issue a new certificated security as a replacement for a lost certificated security. If Ohio law does not authorize the trial court's issuance of a replacement stock certificate, then the trial court erred in issuing the replacement Limited stock certificate.

{¶ 23} R.C. 1308.41, which adopts UCC 8-405 and 8-406, governs the replacement of lost, destroyed, or wrongfully taken certificated securities. R.C. 1308.41(B) specifies:

> If the owner of a certificated security, whether in registered or bearer form, claims that the security has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner:

> (1) So requests before the issuer has notice that the security has been acquired by a protected purchaser;
>
> (2) Files with the issuer a sufficient indemnity bond; and
>
> (3) Satisfies other reasonable requirements imposed by the issuer.

{¶ 24} If an issuing corporation refuses to issue a replacement stock certificate even though the owner has met the requirements of R.C. 1308.41(B), a court may compel the recalcitrant issuer to take action. UCC Official Comment, UCC 8-405, Comment 2 (1962 and 1977); 8A Lawrence at [Rev] 8-405:4. In such an action:

> the court of common pleas or the probate court of the county in which the principal office of the corporation is located shall have jurisdiction to hear and determine all questions respecting such loss, theft, or destruction, the person interested therein, the bond required to be given to protect the corporation or any person injured by the execution and delivery of a new certificate, the terms on which a new certificate shall be executed and delivered, and the costs and counsel fees, if any, to be allowed to the corporation.

R.C. 1701.27(A).

{¶ 25} Thus, under Ohio law, a common pleas court possesses the authority to order a corporation to issue a new stock certificate to replace a lost stock certificate. However, nothing in Ohio law allows the court itself to issue a new stock certificate on behalf of a corporation. Indeed, we fail to see how a court could accomplish such an action, as a stock certificate must be "signed by the chairperson of the board or the president or a vice-president and by the secretary, an assistant secretary, the treasurer, or an assistant treasurer of the corporation" unless the corporation's articles or regulations provide otherwise. R.C. 1701.24(B). Normally, a trial court judge holds none of the relevant positions, so he or she cannot execute a replacement stock certificate.

{¶ 26} Our conclusion should come as no surprise to Huntington. In its motion in aid of execution of the judgment, Huntington stated, "Huntington has been unable to reach Ettayem's shares in Limited pursuant to other legal means, and accordingly, *this Court has the authority under R.C. 1308.32(E) to order Ettayem to obtain and Limited to issue the Replacement Stock Certificate.*" (Emphasis added.) (Apr. 7, 2016 Mot. in Aid

of Execution at 8.)  We agree with this statement; the trial court has the authority to order Ettayem to comply with R.C. 1308.41(B) and to require Limited to issue a replacement stock certificate upon Ettayem's compliance.[3]  We understand that Huntington would prefer that the trial court go further.  Huntington wishes to remove Ettayem from the process of obtaining a new stock certificate because it fears that Ettayem will impede that process.  Whether valid or not, that fear cannot justify contravention of Ohio law.  Quite simply, Ohio law does not authorize a trial court to issue a stock certificate.  Accordingly, we conclude that the trial court erred in issuing a new Limited stock certificate, and we sustain Ettayem's second assignment of error to the extent that he alleges error in the issuance of that stock certificate.

{¶ 27} For the following reasons, we dismiss Ettayem's first assignment of error because we lack jurisdiction to review it.  We sustain in part and overrule in part Ettayem's second assignment of error.  We affirm the April 8, 2016 judgment of the Franklin County Court of Common Pleas to the extent that it prohibited the transfer of Ettayem's Limited stock, and we reverse that judgment to the extent that it issued a new stock certificate to replace Ettayem's original Limited stock certificate.

*Judgment affirmed in part, reversed in part.*

TYACK and HORTON, JJ., concur.

———————————

[3] We note that the Franklin County Court of Common Pleas has jurisdiction to hear and determine all questions regarding the loss of Ettayem's stock certificate and the issuance of a replacement stock certificate because, as Ettayem admitted, Limited's principal place of business is in Franklin County. (May 1, 2015 Tr. at 5.)