NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5067-15T3
            A-5615-15T3
            A-0443-16T3

CHRISTOPHER C. CONA,
individually and as a class
representative on behalf of
others similarly situated,

    Plaintiff-Appellant,

v.

TOWNSHIP OF WASHINGTON,

    Defendant-Respondent.

_____

SHARON DOWNS, individually and
as a class representative on
behalf of others similarly
situated,

    Plaintiff-Appellant,

v.

BOROUGH OF PAULSBORO,

    Defendant-Respondent.

_____

WILLIAM R. BRODY and
KATHLEEN D. O'HARA,
individually and on behalf of
others similarly situated,

    Plaintiffs-Appellants,

v.

| **APPROVED FOR PUBLICATION** |
| :---: |
| **August 29, 2018** |
| **APPELLATE DIVISION** |

CITY OF WOODBURY, BOROUGH OF
WESTVILLE, BOROUGH OF GLASSBORO,
BOROUGH OF NATIONAL PARK, and
TOWNSHIP OF DEPTFORD,

    Defendants-Respondents.

_____

Argued May 24, 2018 — Decided August 29, 2018

Before Judges Simonelli, Haas and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Docket Nos. L-1602-15, L-0180-16, L-0487-16 and L-1102-15.

Lewis G. Adler argued the cause for appellants (Lewis G. Adler, attorney; Lewis G. Adler, Roger C. Mattson and Paul DePetris, of counsel and on the briefs).

Brian P. Shotts argued the cause for respondents Township of Washington (in A-5067-15) and Township of Deptford (in A-0443-16) (Grace, Marmero & Associates, LLP, attorneys; Brian P. Shotts, on the briefs).

M. James Maley, Jr. argued the cause for respondent Borough of Paulsboro (in A-5615-15) (Maley Givens, PC, attorneys; M. James Maley, Jr. and Erin E. Simone, on the brief).

James P. Pierson argued the cause for respondent City of Woodbury (in A-0443-16) (Angelini, Viniar & Freedman, LLP, attorneys; James P. Pierson, on the brief).

Gary M. Marek argued the cause for respondents Borough of Westville and Borough of Glassboro (in A-0443-16) (Law Office of Timothy D. Scaffidi, attorneys; Gary M. Marek and Timothy D. Scaffidi, on the briefs).

Walter F. Kawalec, III argued the cause for respondent Borough of National Park (in A-0443-16) (Marshall Dennehey Warner Coleman & Goggin, attorneys; Walter F. Kawalec, III and Ashley L. Toth, on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

In these matters, which we considered back-to-back and have consolidated for purposes of writing one opinion, plaintiff landlords rely upon our opinion in Timber Glen Phase III, LLC v. Township of Hamilton, 441 N.J. Super. 514 (App. Div. 2015) in their appeals from orders[1] entered in the Law Division dismissing their complaints that alleged defendant municipalities' ordinances that required plaintiffs to pay certain license fees are ultra vires. In Timber Glen, the ordinance we reviewed required landlords to obtain a license before any residential rental unit could be occupied and pay an annual license fee of $100 per unit.[2] Id. at 519. The municipality contended it had

_____

[1] Plaintiffs Kathleen O'Hara and William R. Brody also appeal from the Law Division's orders denying their motions for partial summary judgment and reconsideration of the dismissal of their complaint.

[2] The ordinance invalidated in Timber Glen, provided in pertinent part: "[N]o person shall occupy any Residential Rental Unit nor shall the owner permit the occupancy of any[] residential rental unit within the Township of Hamilton if said unit has not been Licensed by the Bureau of Fire Prevention on
(continued)

authority under the Licensing Act, N.J.S.A. 40:52-1, to require such licenses and that its authority was compatible with its regulatory power under N.J.S.A. 40:48-2.12m. Id. at 523. The stand-alone license fee it charged was in addition to fees it required for mandatory "annual habitability inspections . . . ." Id. at 519.

We rejected the municipality's position in Timber Glen, noting, "the powers to regulate and to license, although related, are discrete" and that the power to regulate did not include the power to require a license and payment of a fee. Id. at 526 (citation omitted). We concluded that a 1998 amendment to the Licensing Act prohibited the licensing of rental units rented for 175 days or more and that any ordinance attempting to impose such a requirement was "invalid as ultra vires and unenforceable." Id. at 532. However, we noted that "[o]ur opinion [was] confined to the authority to license and [did] not address [a municipality's] regulatory or inspection authority granted by other statutes designed to assure rental premises remain safe, building and fire code compliant and structurally sound." Id. at 532 n.4 (citation omitted).

_____

(continued)
forms which shall be provided for that purpose."  441 N.J. Super. at 519 (second alteration in original).

The issue raised in the present appeals is whether fees imposed by defendant municipalities are for revenue generation as prohibited under Timber Glen, or if they are reasonably related to the municipalities' exercise of their regulatory powers as authorized by statute. The plaintiffs' complaints alleged the municipalities violated the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and that the ordinances requiring the payment of license fees were ultra vires under Timber Glen, entitling them to damages and a declaratory judgment awarding them injunctive relief. The municipalities responded by filing motions to dismiss under Rule 4:6-2(e). The trial court judges who considered the matters found that the challenged ordinances were distinguishable from the ordinance invalidated in Timber Glen, as the fees were permissible under a municipality's regulatory powers in order to defray costs for inspections or registration of rental units. For the reasons that follow, we affirm.

The challenges raised by each plaintiff are summarized as follows. O'Hara brought her challenges against defendants City of Woodbury and the Borough of Glassboro where she maintained properties for rent. The Woodbury ordinance[3] requires landlords

---

[3] Woodbury, N.J., Landlord/Tenant Licensing ch. 114, art. I, §§ 114-1 to -20 (2000).

(continued)

to secure a license that "attest[ed] that the rental unit had been properly registered" under the ordinance. Before a unit can be registered and occupied, the ordinance requires an inspection "for the purpose of determining Woodbury City Code compliance and compliance with [the ordinance's] Housing Standards . . . ." Annual registration of rental units and payment of a $100 "license fee" have to be completed before the city will issue a license to permit their rental.

The Glassboro ordinance[4] also requires annual registration and the payment of a fee before it will issue a license permitting the rental of a unit. In addition, if there is a change in occupancy, a new registration and an additional fee have to be paid. A license will not be issued, however, unless the unit passes an inspection to insure there are no "safety violations" and that the units meet the ordinance's "performance standards . . . ." The $160 "annual registration fee [that the ordinance requires] include[s] all inspections and one re[-]inspection at no additional fee."

Brody, a landlord who maintains rental properties in defendants Borough of Westville, Borough of National Park and

_____

(continued)

[4] Glassboro, N.J., Rental Housing ch. 379, §§ 379-1 to -10 (2004).

the Township of Deptford, challenged each of those municipality's ordinances. The Deptford ordinance[5] contains a registration and licensing requirement, but does not require re-registration upon a change in occupancy, although it requires re-inspection. Inspection is required "to determine the condition of rental facilities, rental units and rooming/boarding houses in order . . . to safeguard the health, safety, welfare of the occupants . . . and of the general public." The ordinance further provides that a fee has to be paid upon registration before a license will be issued. It also provides for a re-inspection fee upon a change in occupancy. No separate licensing fee is imposed.

Westville's and National Park's ordinances also require annual registration and the payment of a fee before licenses will be issued to landlords. Westville's ordinance[6] imposes an "annual registration fee and first inspection fee" of fifty or sixty dollars per rental unit depending on the number of rental units on a property. It also has a re-inspection fee and late fee that it charged for untimely payments. The ordinance provides that "inspection shall be for the purpose of

---

[5] Deptford, N.J., Ordinance O.16.12 (Oct. 16, 2012).

[6] Westville, N.J., Rental Property ch. 272, art. I, §§ 272-1 to -27 (2006).

determining . . . Land Use and Development compliance and, to the extent applicable, to determine if the property complies with the Property Maintenance Code, Uniform Construction Code, Housing Code and/or Building Code and/or Uniform Fire Safety Act." Westville's ordinance does not designate any of its fees as license fees.

Similarly, National Park's ordinance[7] provides "[u]pon the filing of a completed registration form and payment of the prescribed fee and a satisfactory inspection, the owner shall be entitled to the issuance of a license . . . ." Payment of the fee was due "[a]t the time of the filing of the registration form . . . ." The ordinance calls for "inspections to determine the condition of rental facilities, rental units, and rooming/boarding houses in order [to] . . . safeguard the health, safety, welfare of the occupants . . . and of the general public." Periodic inspections are also required to ensure "zoning, [and] compliance . . . with Property Maintenance, the Uniform Construction Code, Housing Code, . . . the Building Code and the Uniform Fire Safety Act." National Park's ordinance also does not mandate the payment of a separate fee for the issuance of a license.

_____

[7] National Park, N.J., Code of National Park Rental Units ch. 97, art. I, §§ 1 to 19 (2007).

O'Hara and Brody filed an initial complaint in August 2015, which they amended in April 2016. Judge David W. Morgan granted the municipalities' motions to dismiss on June 28, 2016.[8] In his oral decision placed on the record on that date, Judge Morgan discussed our holding in Timber Glen, the significance of footnote four in that case, and the distinction between a fee charged by a municipality to offset costs of regulation as compared to generating revenue, as discussed in Timber Glen and Daniels v. Point Pleasant, 23 N.J. 357 (1957). The judge then framed the issue before him as being, "Do we have a license-type of ordinance or is it a regulation—type of . . . ordinance?" He defined a license as being the granting of "authority to go out and conduct [the subject] activity" and "[r]egulations . . . . [as] relat[ing] to the manner by which the activity is to be conducted." Relying on N.J.S.A. 40:48-2.12a, N.J.S.A. 40:48-2.12a1, N.J.S.A. 40:48-2.12c,[9] and N.J.S.A. 40:48-2.12m[10]

---

[8] Plaintiffs filed cross-motions for partial summary judgment as to liability that the judge denied.

[9] N.J.S.A. 40:48-2.12c provides:

> Any ordinance adopted pursuant to this act may provide for the registration of the owners and management of every building and structure in the municipality which is occupied by [two] or more families as tenants of the owner or lessor. Such registration shall be with the clerk of the

(continued)

the judge noted that municipalities are authorized to regulate

buildings in order to insure the public's health and safety and

(continued)
> municipality upon forms prescribed by and furnished by the municipality. Every such registration form shall include the name and address of the owner, the name and address of the lessor if other than the owner, and the name and address of an agent in charge of the premises residing in the municipality.

[10]  The statute provides:

> The governing body of a municipality may adopt ordinances regulating the maintenance and condition of any unit of dwelling space, upon the termination of occupancy, in any residential rental property for the purpose of the safety, healthfulness, and upkeep of the structure and the adherence to such other standards of maintenance and condition as are required in the interest of public safety, health and welfare. Such ordinances shall require the owner of any residential rental property, prior to rental or lease involving a new occupancy of any unit of dwelling space in such property, to obtain a certificate of inspection or occupancy for the unit of dwelling space. Such certificate of inspection or occupancy shall be issued by the municipality upon the inspection of the unit of dwelling space by a municipal inspector and his findings that such unit meets the standards provided by law. The municipality may charge a fee to fund the costs of the inspections and the issuance of the certificates. . . .

> [N.J.S.A. 40:48-2.12m.]

A-5067-15T3

make inspections for that purpose, require registrations, and issue certificates of occupancy (CO) and charge fees for those certificates.

Turning to the challenged ordinances, he observed that the municipalities' "ordinances have very similar framework." He found that the ordinances were different from the one addressed in Timber Glen because in order to get a license under the framework of the challenged ordinances, a landlord had to comply with various regulations that were authorized by statute, not just pay a fee as was the case in Timber Glen. The distinction, he concluded, gave the challenged ordinances "the appearance of . . . regulation, as opposed to simply a licensing act." After reviewing in detail the specific contents of the ordinance challenged in Timber Glen, and commenting on what parts related to regulation versus licensing, the judge turned to the subject ordinances, which he also discussed in detail.

During his review, Judge Morgan observed that unlike Timber Glen, Woodbury's ordinance required landlords to pay a fee and comply with various regulations before being able to obtain a license. He stated:

> [W]hen you read . . . [the] ordinances they're . . . a very integrated set of ordinances that basically regulate the conduct, the operations of the apartment.

And charge a fee for the license that you get, once you've demonstrated after an inspection that you're in compliance with those regulations.

So it becomes much more of a regulatory —type of adoption, as opposed to what you see in [Timber Glen.] . . .

I'm satisfied that the ordinances that we have, . . . are much more in the form and framework of a regulation that [has] as their component the issuance of a document, which indicates that [you have] complied with the regulation.

The judge followed the Court's decision in Nelson Cooney & Son, Inc. v. South Harrison, 57 N.J. 384 (1971) and found persuasive the Law Division's decision in Devine v. Mantua Township, 28 N.J. Super. 299 (Law Div. 1953), and concluded that the fees being charged by the municipalities were reasonably "relate[d] to that regulation and [was] not being utilized as a tax revenue." He turned to plaintiffs' CRA claim and found that since the fees paid were for regulatory purposes, there was no taking in violation of their constitutional rights.[11]

Brody and O'Hara filed a motion for reconsideration. In their motion, they argued that contrary to Judge Morgan's findings, Woodbury's ordinance did not require inspections

---

[11] In the remainder of his oral decision, the judge reviewed each of the other municipalities' ordinates in detail and explained how they were the same or similar to Woodbury's as compared to the one in Timber Glen.

before issuing a license. They also contended that the fees associated with inspections required by other municipalities' ordinances were already charged in connection with the applications for a CO. As Judge Morgan described their position, "plaintiff[s'] argument [was that] landlords are required to pay a higher fee for the combination rental license/[CO] than a non-landlord would have to pay for just the [CO], but with the municipality expending the same amount of work." Finally, relying on the United States Supreme court's opinion in Brown v. Legal Foundation of Washington, 538 U.S. 216 (2003), plaintiffs argued the motion judge overlooked the Court's determination that the government's taking of money, like real or other personal property, was a taking for constitutional purposes.

Judge Morgan considered the parties' oral arguments on September 2, 2016, and on September 6, 2016, he entered an order denying plaintiffs' motion, supported by a written statement of reasons. The judge conducted a detailed analysis of Woodbury's ordinance, conceded that on "first blush [it] appear[ed] to be an 'apply and pay' type of ordinance" similar to the one in Timber Glen, but upon closer examination it was clear that a satisfactory inspection was a condition to the issuing of the license. Addressing the municipalities' charging of a premium

inspection fee in addition to charging one for issuing a CO, the judge found the argument unpersuasive because plaintiffs did not plead in their complaint that the fee being charged was excessive. Moreover, he concluded that "the licensing ordinances require the municipality to engage . . . in work over and above that encompassed by a [CO] review, most notably the review of tenant screening submissions and compliance with standards for occupants of the rented unit." Finally, the judge rejected plaintiffs' argument "that requiring a fee for a license required under an ultra vires ordinance creates a constitutional taking supporting a civil rights claim" under Brown because unlike "when the government appropriates money from a specifically identified fund of money[,] . . . a law imposing the obligation to pay a generalized monetary liability such as a tax or fee . . . is not a taking."

We turn next to plaintiff Christopher C. Cona's challenge to defendant Township of Washington's ordinance[12] that requires landlords to submit annual registrations, as well as upon a change of occupancy, and to pay a fee "prior to the issuance of a license . . . ." It also provides that "[e]ach rental unit shall be inspected at least once every twelve-month period."

---

[12] Washington, N.J., Rental Property and Landlord Registration ch. 185 §§ 185-1 to -21 (2005).

Inspections are required to determine "[z]oning, compliance and, to the extent applicable, to determine if the property complies with . . . Property Maintenance and Housing Standards, and Uniform Construction Code, . . . and the Uniform Fire Safety Act." If the inspection is unsatisfactory, the property cannot be registered "nor shall a license issue" and the premises cannot be occupied "until the necessary corrections have been made so as to bring the property and rental unit into compliance with the applicable code and the property is thereafter subsequently inspected, registered, and licensed." In addition, the ordinance prohibits the registration or licensing of any rental unit "unless all municipal taxes, water and sewer charges and any other municipal assessments are paid on a current basis" and all units are in compliance with all applicable codes and regulations. The only fee imposed, which was to be paid upon registration of the rental unit, is based on the number of units on a property.

On November 25, 2015, Cona filed a complaint challenging Washington Township's ordinance. Judge Morgan granted Washington's motion to dismiss on July 8, 2016 after considering oral argument. The judge found the "ordinance . . . doesn't have a combination of what would appear licensing and regulatory-type requirements" because "it integrates regulation

with the issuance of the registration and licensing, which[ is] different[ from] the[] ordinance[ challenged in <u>Timber Glen</u>], which simply was, pay your money, get your license . . . and that was not permitted, authorized, enabled by the licensing act." The judge explained that the ordinance in <u>Timber Glen</u> required "a whole separate fee as it relates to the inspections and . . . there is no tie-in between the two; there's no, you don't get your license if your inspection isn't so good." He concluded the ordinances had "regulatory qualities to them" that addressed "tenant screening" and registration, inspections, unit occupation limits, payment of taxes and other municipal obligations.

Judge Morgan also addressed Cona's CRA claim. He concluded that "the money that's taken can't be considered a takings under the Constitution." Addressing Cona's contention that a fee being charged for a CO and a landlord's license was improper, Judge Morgan stated: "[T]he fact that there[ are] two requirements . . . does not necessarily negate the ability" to require both fees to address inspections and registrations in satisfaction of "regulation as opposed to pure licensing."

Finally, we review plaintiff Sharon Downs challenge to defendant the Borough of Paulsboro's March 1, 2016 ordinance[13] governing rental properties that removed all licensing requirements from an earlier version of the same ordinance.[14] Under the 2016 ordinance, owners of rental units are required to file a registration application annually and with each change in occupancy for any rental unit, and pay a $100 inspection fee per unit to ensure compliance with the applicable codes and regulations. It also imposes a re-inspection fee, stating: "In the event that a re-inspection of a rental unit is deemed to be necessary . . . the owner . . . must pay a [fifty dollar] re-

---

[13] Paulsboro, N.J., Rental Property ch. 59B, art. I, §§ 59B-1 to -19 (2016).

[14] In 1997, Paulsboro adopted an ordinance, see Paulsboro, N.J., Rental Property ch. 59B, art. I, §§ 59B-1 to -20 (1997), that required the registration, inspection and licensing of residential rental units. That ordinance, was adopted "to [e]nsure that residential rental units are properly maintained, to require landlords to comply with the Property Maintenance Code and to protect the lives and property of the Borough residents." To achieve this purpose, "rental unit[s were required to be] registered, inspected and licensed in accordance with [the o]rdinance." It provided: "Upon the filing of a completed registration form, and payment of the prescribed fee, and a satisfactory inspection[,] the owner shall be entitled to the issuance of a license . . . ." There was no separate fee required for the issuance of the license. The ordinance required periodic inspections stating "[e]ach rental unit shall be inspected at least once every [twelve-month] period[,]"and there was no fee required to be paid for the inspections. The 2016 ordinance makes no mention of a licensing requirement.

inspection fee." The ordinance provides that a rental unit that fails inspection cannot be registered. A "rental unit may [also not] be registered unless all municipal taxes, water and sewer charges and any other municipal assessments are paid . . . ." The ordinance mandates that the rental of any residential unit is prohibited "unless the rental unit is registered in accordance with" the ordinance.

On April 15, 2016, Downs filed her complaint challenging the 2016 ordinance validity.[15] Judge Jean B. McMaster granted Paulsboro's motion and dismissed Downs' complaint with prejudice on July 28, 2016, for the reasons stated in her oral decision placed on the record on the same date, after considering the parties' earlier written submissions and oral arguments on May 3, 2016. The judge first acknowledged that municipalities may charge fees to defray the costs of the exercise of their power to regulate, but such fees cannot be charged simply "for revenue purposes" and must be reasonable and related to the exercise of

---

[15] After we issued our opinion in Timber Glen, Downs initially filed an earlier action challenging Paulsboro's 1997 ordinance. In response, on March 1, 2016, Paulsboro adopted its current ordinance, which removes all licensing requirements. This prompted Downs to file a separate action challenging the 2016 ordinance as also being invalid pursuant to Timber Glen. Judge McMaster dismissed both actions on July 28, 2016, and Downs filed separate appeals. On September 28, 2016, we granted Downs' motion to consolidate the appeals from the dismissal of both of her complaints.

a municipality's police power. The judge concluded the $100 fee charged by Paulsboro was reasonable and "clearly [related to] advanc[ing] a substantial public interest[,] . . . public health and . . . . insuring that rental premises remain safe." As such, charging the fees did not constitute a taking in violation of the CRA and, further, that because the fee charged were for "registration and inspection" they did not violate Timber Glen's holding that prohibited using fees as "a revenue-generating tax."

The judge supplemented her reasons in the order she entered on July 28, 2016, in which she stated:

> Under Bernardsville Quarry v. Bernardsville, 129 N.J. 221 (1992) a municipality has [a right] to charge fees which are incidental to its police power to regulate pursuant to [N.J.S.A.] 40:48-2. [Timber Glen] does not affect the municipality's ability to regulate for the health [and] safety of its residents ([f]ootnote [four] is duly noted). [The] municipality remains empowered to conduct inspections [and] register units for [the general] welfare. Timber Glen is distinguishable from ordinances at issue in these matters.

On appeal, each of the plaintiffs essentially argues the same points. Brody and O'Hara argue it was error for Judge Morgan to deny their cross-motions for summary judgment and dismiss their complaint because contrary to the judge's finding, the ordinances they challenged were similar to the one in Timber

Glen and therefore ultra vires. According to plaintiffs, "[u]sing the guise of licensing tenancies, defendants try to illegally levy a tax for revenue purposes without legislative authority . . . ." They contend that the judges' reliance on case law the judges found controlling or persuasive was inapposite and that they made out viable claims under the CRA and were entitled to a declaratory judgment in their favor. According to plaintiffs, the municipalities did not establish they were entitled to dismissal of plaintiffs' complaint under Rule 4:6-2(e). They assert their "complaints were amply pled[ and t]he trial court permitted no discovery to test the view that the ordinance fees were reasonable in comparison to the expenses defendants incurred and services defendants provided . . . ." Brody and O'Hara also contend it was error for Judge Morgan to deny their motions for reconsideration because "Woodbury also charges a separate fee for a [CO] inspection . . . ."

Cona also argues that it was error to dismiss his complaint because "comparing the [Washington] ordinance and the [Timber Glen] ordinance[,] which the Appellate Division ruled was ultra vires[,] leads to the conclusion that the [Washington] ordinance is likewise ultra vires[.]" He contends that the fees imposed by the Washington ordinance are unreasonable in light of

Washington's CO requirement, which also requires a fee for inspection. He also argues "the order dismissing the complaint is deficient" because it "fails to provide a place for the [c]ourt to note that the motion was opposed . . . ." Last, in his reply brief, Cona asserts for the first time that Washington's ordinance's registration fee is unreasonable because the information collected through the registration is duplicative of what landlords already provide through the New Jersey Landlord Registration Statute, N.J.S.A. 46:8-28.

Downs argues that it was error for the court to dismiss her complaints because Paulsboro's 1997 and 2016 ordinances, "like the [Timber Glen] ordinance . . . [are] ultra vires[.]" Downs also contends "the trial court erred by holding that the licensing fees are merely lawful registration and inspection fees[.]" She asserts that "[t]his is a 'takings' and/or confiscation [CRA] case" and that "the complaint pleads viable CRA takings and/or confiscation violations[.]" Downs also argues that the ordinances found valid in State v. Mill Village Apartments, No. A-0522-14 (App. Div. Feb. 10, 2016),[16] Lake

_____

[16] In Mill Village, we reviewed the validity of an ordinance that required rental units to be annually registered at a cost of $100 and to be inspected annually and with each change in occupancy. slip op. at 4-5. We rejected arguments that "the registration requirement was a de facto licensing requirement and therefore invalid[,]" id. at 9, and concluded "[t]he
(continued)

Valley Associates, LLC v. Township Of Pemberton, 411 N.J. Super. 501 (App. Div. 2010),[17] and Dome Realty, Inc. v. Paterson, 83 N.J. 212 (1980)[18] are distinguishable from the ordinances here. She further contends that the "the volunteer [payment] rule doesn't apply to the CRA or the facts of this case[.]" According to Downs, "the 1998 amendment to the Licensing Act and [Timber Glen] are retroactive[.]" Last, she argues her "complaints pled viable [Uniform Declaratory Judgment Law] claims[,] which the trial court failed to address[.]"

We review de novo a trial court's order dismissing a complaint under Rule 4:6-2(e), applying the same standard as the trial court. See Stop & Shop Supermarket Co. v. Cty. of Bergen,

---

(continued)
fees . . . were imposed for functions related to the City's exercise of regulatory power that was authorized by statute." Id. at 10.

[17] In Lake Valley, we reviewed an ordinance that required the registration of all rental units and "at least one inspection every three years or upon change of occupancy[,]" 411 N.J. Super. at 502, and rejected plaintiff's argument that the requirements imposed by the ordinance exceeded those explicitly delegated by the legislature and were not permitted, id. at 504, holding that the ordinance was not preempted by legislative action. Id. at 506-07.

[18] In Dome Realty, the New Jersey Supreme Court upheld a municipal ordinance requiring landlords to have their rental units inspected and to obtain a CO immediately prior to allowing a new tenant to take possession as a valid exercise of authority pursuant to N.J.S.A. 40:48-2.12a and N.J.S.A. 40:48-2. 83 N.J. at 219, 229-30.

450 N.J. Super. 286, 290 (App. Div. 2017). That standard requires us to examine the challenged pleadings to determine "whether a cause of action is 'suggested' by the facts." Teamsters Local 97 v. State, 434 N.J. Super. 393, 412 (App. Div. 2014) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). We search the pleading "in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002) (citing Printing Mart-Morristown, 116 N.J. at 746). "[I]t is the existence of the fundament of a cause of action . . . that is pivotal[.]" Teamsters Local 97, 434 N.J. Super. at 412-13 (second alteration in original) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)).

"A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011) (citing Camden Cty. Energy Recovery Assocs., L.P. v. N.J. Dep't of Envtl. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd, 170 N.J. 246 (2001)). Ordinarily, dismissal for failure to state a claim is without prejudice, and the court has discretion to permit a party to amend the pleading to allege additional facts in an effort to state a claim. See Hoffman v.

Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009). Although leave to amend should be liberally granted, "without consideration of the ultimate merits of the amendment," it need not be granted where, an amendment would be a "futile" and "useless endeavor." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (citation omitted); see also Prime Accounting Dep't v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013).

The result of these appeals turn on whether the challenged ordinances are valid. "A municipal ordinance under review by a court enjoys a presumption of validity and reasonableness." State v. Clarksburg Inn, 375 N.J. Super. 624, 632 (App. Div. 2005) (citing First Peoples Bank of N.J. v. Twp. of Medford, 126 N.J. 413, 418 (1991)). "Municipal ordinances are normally liberally construed in favor of the municipality and are presumed valid, with the burden of proving otherwise placed upon the party seeking to overturn the ordinance." State v. Golin, 363 N.J. Super. 474, 481-82 (App. Div. 2003) (citations omitted); Dome Realty, Inc., 83 N.J. at 235 (stating that "courts place a heavy burden on the proponents of invalidity"). Only a showing of "clear and compelling evidence" may overcome this presumption. Spring Lake Hotel & Guest House Ass'n. v. Spring Lake, 199 N.J. Super. 201, 210 (App. Div. 1985).

Applying these guiding principles, we conclude from our de novo review that all of the plaintiffs' complaints were properly dismissed under Rule 4:6-2(e), as none of the challenged ordinances were ultra vires in that the fees charged under them were reasonably related to the municipalities' exercise of their obligation to promote the safety and welfare of their residents. We therefore affirm each order under appeal substantially for the reasons expressed by Judge Morgan and Judge McMaster in their cogent oral and written statements of reasons. We add only the following comments.

As we observed in Timber Glen, "licensing is a distinct function authorized by [N.J.S.A.] 40:52-1" and, as we held, a municipality "may not mandate by ordinance licensure of residential rentals for 175 days or more, accompanied by an annual licensing fee[,]" 441 N.J. Super. at 532, because to require a "license [for such] rental properties . . . by its nature includes a revenue generating component, [which] is circumscribed by the provisions of the Licensing Act." Id. at 527 (citing Bernardsville Quarry, 129 N.J. at 229).

The prohibition against requiring licenses did not abrogate a municipality's power to regulate rental property within its jurisdiction, including requiring that they be inspected before being occupied by a new tenant or its ability to "charge a fee

to fund the costs of the inspections and the issuance of the certificates." N.J.S.A. 40:48-2.12m; see also Dome Realty, Inc., 83 N.J. at 227-28. A municipality is also granted specific authority to regulate local "buildings and structures and their use and occupation to prevent and abate conditions therein harmful to the health and safety of the occupants of said buildings and structures and the general public in the municipality." N.J.S.A. 40:48-2.12a. "Specific statutes [authorize] imposing registration requirements for residences containing two or more families, and regulating 'the maintenance and condition of any unit of dwelling space, upon termination of occupancy[.]'" Timber Glen, 441 N.J. Super. at 526 (citations omitted).

Landlords are also subject to ordinances that require that they obtain COs under certain circumstances, which might include the payment of a separate fee.[19] See, e.g., N.J.A.C. 5:23-2.23;

_____

[19] "[T]he conventional occasions for requiring" a CO includes:

> (1) the completion of a building -
> - the purpose being to confirm
> that it has been constructed in
> accordance with the building code,
> the building permit and any other
> applicable municipal regulation;
> (2) the alteration of a building -
> - the purpose being the same as in
> (1) above; (3) the use of vacant
> and hitherto unused land -- the

(continued)

N.J.A.C. 5:23-2.23A. A municipality may regulate rental units and buildings as a whole, and the combination might involve some degree of overlap. For example, a rental unit is inspected for compliance with tenancy regulations, and the building in which it is located is inspected to insure it is sound and constructed in accordance with required building permits. See N.J.A.C. 5:23-2.23A. That overlap does not limit a municipality's ability to offset its costs for providing those services by charging fees, as long as they are not simply exercises in revenue production. We discern no such exercise in these cases as we did in Timber Glen.

---

(continued)

purpose being to insure that the intended use conforms to the zoning ordinance and any other pertinent regulation; (4) any change of use -- whether the land be improved or not -- the purpose being as last stated.

. . . [T]his list [is not] exclusive: "[t]here may be, or there may later develop, other occasions when such a certificate will serve a useful and valid end in land use control."

[Dome Realty, Inc., 83 N.J. at 231 (fourth alteration in original) (citations omitted) (approving the requirement for a CO upon a tenant vacating an apartment).]

Similarly, the fact that an ordinance calls for additional information to be provided for registration than what the State mandates, see N.J.S.A. 46:8-28, and charges a reasonable, associated fee does not deem the ordinance ultra vires.[20] "[T]he Legislature has empowered [municipalities with the authority] to adopt an inspection and certification scheme for rental housing[,]" Dome Realty, Inc., 83 N.J. at 232, and it is within a municipality's authority to charge a reasonable fee to defray the costs it incurs in carrying out that authority. Nelson Cooney & Son, Inc., 57 N.J. at 390 n.4.

Turning to the remaining argument that plaintiffs should have been allowed to proceed to discovery in order to determine the reasonableness of the fees charged by the ordinances, we conclude that it is without merit and does not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, that plaintiffs have made no showing that the fees were unreasonable and they are "not entitled to turn the discovery process into a fishing expedition." Ellis v. Hilton

---

[20] We observe that Cona raised this argument for the first time in his reply brief. Although "[r]aising an issue for the first time in a reply brief is improper[,]" and may lead to our decision not to consider it, *Borough of Berlin v. Remington & Vernick, Eng'rs*, 337 N.J. Super. 590, 596 (App. Div. 2001) (citing State v. Smith, 55 N.J. 476, 488 (1970)); Quigley v. Esquire Deposition Servs., 409 N.J. Super. 69, 74 (App. Div. 2009), we choose to address Cona's argument, and conclude it is without merit.

United Methodist Church, ___ N.J. Super. ___, ___ (2018) (slip op. at 9) (citing State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), aff'd, 201 N.J. 229 (2010)).

In light of our determination that plaintiffs' respective complaints were properly dismissed, we need not address Brody and O'Hara's contention that the court erred by denying their cross-motion for summary judgment or their motion for reconsideration.

We will acknowledge, however, that a municipality calling the fees being properly charged "license fees" flies in the face of Timber Glen and causes considerable confusion. In order to correct that problem in these cases and hopefully prevent similar claims in the future, we remand these matters to Judges Morgan and McMaster for entry of an order directing that the affected municipalities strike the reference to their fees as being license fees and changing the designation of any requirement for registration or inspection from being part of a licensing requirement. See United Prop. Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J. Super. 1, 39 (App. Div. 2001) (stating that "[t]he trial judge had the authority to engage in 'judicial surgery,' or narrow construction of a statute or ordinance, to free it from constitutional doubt or defect" (citations omitted)). With that deletion, "the remaining

provisions present . . . viable legislative action, constitutionally sound, and capable of lawful enforcement." Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5067-15T3