**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2479-22

ROXANA GAVIRIA,

     Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF
THE CITY OF ELIZABETH,

     Defendant-Respondent.

_____

Submitted April 23, 2024 – Decided July 19, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2426-22.

Law Office of Eric J. Warner, LLC, attorneys for appellant (Eric J. Warner, of counsel and on the briefs).

La Corte, Bundy, Varady & Kinsella, attorneys for respondent (Christina M. DiPalo, on the brief).

PER CURIAM

Plaintiff Roxana Gaviria appeals from the March 9, 2023, Law Division order dismissing with prejudice her complaint against her employer, defendant Elizabeth Board of Education (Board), pursuant to Rule 4:6-2(e), and denying her motion to amend the complaint. The complaint asserted violations of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. We affirm.

I.

In her two-count complaint filed August 22, 2022, plaintiff, "a teacher's assistant employed by [d]efendant," alleged that between 2018 and 2022, defendant repeatedly "transferred" or "reassigned" her to different positions and school locations in retaliation for her complaining to defendant's human resources office and school administrators. Specifically, plaintiff asserted that around the beginning of the 2018 to 2019 school year, after she complained to a school principal about the teacher to whom she was assigned "expect[ing her] to be exclusively responsible for certain job duties that were supposed to be shared by the teacher and teacher's assistant, including . . . changing students' diapers," she was "re-assigned to a special education classroom," although she had no training "work[ing] with special education students." Around February 20,

2019, when plaintiff contacted defendant's human resources department "to complain about her reassignment because of her lack of experience and training in the field of special education," her request to be transferred was denied.

In the complaint, plaintiff further alleged that she was later threatened with a transfer to "an administrative assistant [position]" as a result of a series of events that included her observing a new teacher pushing an "agitated special-needs student into a bed" to "'force him to fall asleep.'" When the child's mother complained, the Division of Child Protection and Permanency (DCPP) initiated an investigation, during which plaintiff was interviewed in the presence of her union attorney. Plaintiff alleged that she was criticized by the school principal for involving the teachers' union. She further alleged that she refused the threatened reassignment to an administrative assistant position because it would have required plaintiff to work twelve months a year, instead of ten months, "for the same salary."

Subsequently, around April 2019, plaintiff alleged she was assigned "as a substitute teaching assistant" in a "regular education" classroom "to cover for the maternity leave of another . . . assistant," and assigned to "a different classroom" when the assistant "returned from maternity leave." Then, around September 3, 2019, plaintiff alleged she was transferred "to an autistic

A-2479-22

kindergarten classroom." When she complained to human resources about not having "the necessary training or experience to work with autistic children," she was ultimately transferred to the school she had requested but only after being threatened with an assignment to an undesirable school and learning that human resources had labelled her as "'problematic.'"

According to the complaint, the "pattern of retaliation and harassment against [plaintiff]" continued when she received letters of ineligibility in June 2022, informing her that her two children "were ineligible to attend free public school in the Elizabeth Public School system," despite the fact that she had provided proof that her ex-husband resided in Elizabeth and that he was the "[p]arent of [p]rimary [r]esidence" for education purposes pursuant to their marital settlement agreement. Plaintiff alleged it was only after she retained counsel and filed an emergent petition with the New Jersey Commissioner of Education that defendant "conceded that [her] children would be enrolled in . . . [d]efendant['s] school . . . for . . . free . . . for the 2022 to 2023 school year."

In count one of the complaint, plaintiff asserted defendant violated CEPA by retaliating against her for her "complaints to her superiors" which "relate to public policy" and "the welfare of . . . children." In count two, plaintiff asserted

defendant violated the NJCRA by denying her "equal rights and protections that are available to all," in particular, access to a free public education for her children. Defendant moved to dismiss the complaint for failure to state a claim, see R. 4:6-2(e). Plaintiff opposed defendant's motion and cross-moved for leave to amend the complaint. The proposed amended complaint named nine individual board members of defendant, and added a third cause of action reciting the same underlying allegations and asserting defendant "engaged in an ongoing and continuous pattern of employment retaliation against [plaintiff] for exercising her rights." (Emphasis omitted). Defendant opposed the proposed amendment.

Following oral argument, on March 9, 2023, the motion judge issued an order granting defendant's motion to dismiss the complaint with prejudice, and denying plaintiff's cross-motion to amend the complaint. In an accompanying letter opinion, the judge recited the facts and governing legal principles. In summarizing plaintiff's CEPA allegations, the judge stated plaintiff alleged she was retaliated against for:

> (1) reporting her teacher's improper refusal to change students' diapers; (2) complaining about being assigned to special education for which she was unqualified, thereby endangering the welfare and education of the special needs students; (3) complaining about being assigned to positions that require [twelve] months of

work in lieu of [ten] months for the same pay; (4) calling upon her union for help; and (5) . . . cooperating with [a DCPP] investigation involving [p]laintiff's teacher forcing a special-needs child to lie down.

The judge recounted the necessary elements to plead a cause of action for CEPA and determined that plaintiff had established the first and second elements by adequately pleading "a possible violation of public policy," namely, "[a]llegedly . . . harming special-needs students" and children of "'tender' years." However, the judge concluded that plaintiff did not adequately plead the third element because she "failed to demonstrate that an adverse employment action altered the terms and conditions of her employment with the Board." On the contrary, according to the judge, "no adverse employment action was taken against [p]laintiff."

The judge explained that

> [t]he conduct alleged by [p]laintiff is not protected by CEPA and no case law classifies the[] acts as adverse. Plaintiff is a special education teacher's aide in which aides are regularly assigned to [twelve]-month positions in lieu of [ten]-month positions. This occurs because special-needs children require the opportunity for an education in the summer. Moreover, being unqualified for that position does not alter the terms and conditions of her employment. Thus, [p]laintiff's allegations are essentially a disapproval of her working environment and are insufficient to establish a prima facie case of retaliation[] under CEPA.

6

Additionally, [p]laintiff claims that she was retaliated against by the alleged exclusion of her children from the . . . Elizabeth School System. However, [defendant] has an obligation to investigate any residency issues and did not improperly pursue the inquiry. [Defendant] promptly investigated the matter and concluded that [p]laintiff's children may remain students in the Elizabeth School System. Subsequently, [p]laintiff proceeded to withdraw her petition to the Office of Administrative Law [(OAL)]. Thus, [defendant] did not adversely affect [p]laintiff's employment by conducting an obligatory residency investigation. Therefore, even after a generous reading is applied to the [c]omplaint, [p]laintiff has not plead an actionable claim, under CEPA, and the [c]ourt must dismiss the claim with prejudice.

The judge also determined that plaintiff did not "plead an actionable claim[] under the NJCRA" because defendant did not deny plaintiff's children a free public education. According to the judge, the children ultimately "remain[ed] in the . . . Elizabeth School System" and plaintiff "withdr[e]w her petition to the [OAL]." Furthermore, there was no finding "of any impropriety" on the part of defendant by "the [a]dministrative [l]aw [j]udge" who presided over the matter. Therefore, the judge dismissed the NJCRA claim with prejudice.

As to plaintiff's cross-motion to amend, the judge explained:

the [c]ourt finds that permitting [p]laintiff's amendment would be futile. Plaintiff seeks to name the individual members of the Board who she alleges forced her to

7

retain counsel and caused her damages through their violation of the NJCRA. However, . . . [p]laintiff has not plead an actionable claim[] under the NJCRA. Naming the individual members of the Board does not cure the fact that [p]laintiff has not sufficiently plead a cause of action. Thus, the [c]ourt must deny [p]laintiff's motion to amend[] under the futility prong.

In this ensuing appeal, plaintiff raises the following points for our consideration:

POINT I:  THIS COURT SHOULD REVERSE THE [TRIAL] COURT'S GRANT OF DISMISSAL WITH PREJUDICE.

POINT II:  THE COURT SHOULD REVERSE THE [TRIAL] COURT'S DISMISSAL OF [PLAINTIFF]'S CEPA CLAIM, WHERE THE [TRIAL] COURT ERRED BY FINDING THAT NO ADVERSE ACTIONS WERE TAKEN AGAINST [PLAINTIFF].

POINT III:  THIS COURT SHOULD REVERSE THE COURT'S DISMISSAL OF [PLAINTIFF]'S NJCRA CLAIM, WHERE THE [TRIAL] COURT ERRED BY FINDING THAT [PLAINTIFF] FAILED TO PLEAD A CAUSE OF ACTION UNDER THE NJCRA.

II.

Our review of a dismissal for failure to state a claim pursuant to Rule 4:6-2(e) "is plenary and we owe no deference to the trial judge's conclusions." State v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467 (App. Div. 2015). "The inquiry is limited to 'examining the legal sufficiency of the facts alleged on the

face of the complaint,'" ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)), "giving the plaintiff the benefit of 'every reasonable inference of fact,'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)).

Such motions "require the complaint be searched in depth and with liberality to determine if there is any 'cause of action . . . "suggested" by the facts,'" Cherry Hill Mitsubishi, 439 N.J. Super. at 467 (quoting Printing Mart-Morristown, 116 N.J. at 746), and "to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary," Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957).

At this preliminary stage of the litigation, the court is not concerned with the ability of the plaintiff to prove the allegation in the complaint. Printing Mart-Morristown, 116 N.J. at 746. Only where "'even a generous reading of the allegations does not reveal a legal basis for recovery[]'" should the motion be granted, Kieffer v. High Point Ins. Co., 422 N.J. Super. 38, 43 (App. Div. 2011) (quoting Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App.

Div. 2003)), and generally "without prejudice to a plaintiff's filing of an amended complaint." Printing Mart-Morristown, 116 N.J. at 772.

Nonetheless, a complaint should be dismissed where it "states no claim that supports relief, and discovery will not give rise to such a claim." Dimitrakopoulos, 237 N.J. at 107. Indeed, "the essential facts supporting [the] plaintiff's cause of action must be presented in order for the claim to survive," and "conclusory allegations are insufficient in that regard." Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012). "[L]egal sufficiency requires allegation of all the facts that the cause of action requires." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012), abrogated on other grounds by McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 590-92 (2017). Thus, "a dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Rieder v. State, Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987).

Turning to the cause of action at issue in this appeal, CEPA is remedial legislation designed "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Sauter v. Colts Neck Volunteer Fire

10

Co. No. 2, 451 N.J. Super. 581, 588 (App. Div. 2017) (internal quotation marks omitted) (quoting Mehlman v. Mobil Oil Corp., 153 N.J. 163, 179 (1998)). Accordingly, the statute "shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014); see also N.J.S.A. 34:19-3(a), (c).

To that end, the statute prohibits an employer from retaliating "against an employee who discloses, threatens to disclose, or refuses to participate in an activity of the employer 'that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.'" Sauter, 451 N.J. Super. at 587 (quoting N.J.S.A. 34:19-2 to - 3). In determining the sufficiency of a plaintiff's pleading, CEPA does not require that the activity complained of actually violates a law or regulation, only that the employee has a reasonable belief that such is the case. Dzwonar v. McDevitt, 177 N.J. 451, 464 (2003).

A plaintiff alleging unlawful retaliation under CEPA must establish that

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);

11

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar, 177 N.J. at 462).]

Accord Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 280 (2016).

CEPA defines retaliation as "the discharge, suspension[,] or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Still, "the universe of possible retaliatory actions under CEPA is greater than discharge, suspension, and demotion[,]" as evidenced by the statute's express inclusion of "'other adverse employment action taken against an employee in the terms and conditions of employment.'" Donelson v. DuPont Chambers Works, 206 N.J. 243, 257 (2011) (quoting N.J.S.A. 34:19-2(e)).

Nevertheless, for an action to be adverse, it must be completed, and it must have had a significantly negative effect on the employee's terms and conditions of employment. Beasley v. Passaic Cnty., 377 N.J. Super. 585, 606-08 (App. Div. 2005). As such, "not every employment action that makes an employee unhappy constitutes an actionable adverse action." Nardello v. Twp. of Voorhees, 377 N.J. Super. 428, 434 (App. Div. 2005) (internal quotation

12

marks omitted) (quoting <u>Cokus v. Bristol Myers Squibb Co.</u>, 362 N.J. Super. 366, 378 (Law Div. 2002), <u>aff'd</u>, 362 N.J. Super. 245 (App. Div. 2003)).

The judge dismissed the CEPA claim based on his determination that no adverse employment action was taken against plaintiff as required in the third element. We agree that plaintiff failed to satisfy the third element but for different reasons than those found by the judge. <u>See</u> <u>Hayes v. Delamotte</u>, 231 N.J. 373, 387 (2018) ("'[I]t is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion'" (quoting <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001))). We believe plaintiff's claim of retaliation based on transfers and reassignments for her complaints about job duties and the handling of school children fail under the third element because they occurred outside the limitations period.

The statute of limitations for filing a CEPA claim is one year. N.J.S.A. 34:19-5. The accrual dates for discrete acts are the dates upon which the retaliatory or discriminatory events occurred. <u>Roa v. Roa</u>, 200 N.J. 555, 567 (2010) (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002)). "A plaintiff need not know with certainty that there is a factual basis for a claim under CEPA for the one year limitation period to be triggered; it is

sufficient that he [or she] should have discovered that he [or she] may have a basis for a claim." Villalobos v. Fava, 342 N.J. Super. 38, 49 (App. Div. 2001) (emphasis omitted).

When a claimant alleges "a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment," the cause of action accrues "on the date on which the last act occurred." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 21 (2002). Critically, however, this "continuing violation theory cannot be applied to sweep in an otherwise time-barred discrete act." Roa, 200 N.J. at 569.

Indeed, our Supreme Court has explained that

> [t]he continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of [retaliation]. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts.
>
> What the doctrine does not permit is the aggregation of discrete [retaliatory] acts for the purpose of reviving an untimely act of [retaliation] that the victim knew or should have known was actionable. Each such "discrete [retaliatory] act starts a new clock for filing charges alleging that act."
>
> [Id. at 569-70 (quoting Morgan, 536 U.S. at 113).]

14

Plaintiff filed her complaint on August 22, 2022. Thus, to state a viable CEPA claim, any adverse employment action claimed by plaintiff must have taken place no more than one year earlier unless the actions alleged constitute a continuing violation. See N.J.S.A. 34:19-5; Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003). However, plaintiff's alleged retaliatory transfers and reassignments fall well beyond the one-year limitation period, whether considered as discrete acts or as a continuing violation, because plaintiff's last transfer occurred in September 2019, nearly three years prior to her filing her complaint.

Plaintiff's claim that her receipt of the June 2022 residency ineligibility letters for her children served to sweep in her otherwise untimely prior non-discrete acts is unavailing. First, a school residency investigation cannot be considered an "adverse employment action" within the meaning of CEPA because it in no way affected the terms and conditions of plaintiff's employment. Second, because defendant's investigation of her children's residency was private in nature, it did not implicate the public interest as contemplated under CEPA. See N.J.S.A. 18A:38-1(a) (providing that only students "domiciled" in a school district are entitled to attend school in the district).

In Maw v. Advanced Clinical Communications, Inc., 179 N.J. 439, 445 (2004), our Supreme Court reaffirmed that "'[t]he offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee,'" that "the complained of activity must have public ramifications, and that the dispute between employer and employee must be more than a private disagreement" (quoting Mehlman, 153 N.J. at 188). As in Maw, to allow plaintiff's "private dispute with her employer to go forward under CEPA's rubric" would "dilute[] the statute's salutary goals." Id. at 446.

Turning to the NJCRA claims, in 2004, the Legislature adopted the NJCRA "'for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights[,] and to fill any gaps in state statutory anti-discrimination protection.'" Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting Owens v. Feigin, 194 N.J. 607, 611 (2008)). The NJCRA is modeled after the federal Civil Rights Act (CRA), 42 U.S.C. § 1983, and provides in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by

16

threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

See also Filgueiras v. Newark Pub. Schs., 426 N.J. Super. 449, 468 (App. Div. 2012).

Accordingly, the NJCRA "is a means of vindicating substantive rights and is not a source of rights itself." Gormley v. Wood-El, 218 N.J. 72, 98 (2014). "Instead, it is apparent that the [NJCRA] was intended to address potential gaps in remedies available under New Jersey law but not cognizable under the federal civil rights law, Section 1983." Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014). "The elements of a substantive due process claim under the [NJCRA] are the same as those [for a federal CRA claim] under § 1983." Filgueiras, 426 N.J. Super. at 468 (citing Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011)). Namely, a party must first "'identify the state actor, the person acting under color of law, that has caused the alleged deprivation.'" Ibid. (internal quotation marks omitted) (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996)). Next, the party needs to "identify a right, privilege or immunity secured to the" party by the constitutions

17

of the state and federal governments or by state and federal laws.  Ibid. (internal quotation marks omitted) (quoting 42 U.S.C. § 1983).

Thus, to establish a cause of action under the NJCRA, the second element requires a party to "allege a specific constitutional violation."  Matthews v. N.J. Inst. of Tech., 717 F. Supp. 2d 447, 452 (D.N.J. 2010) (citing N.J.S.A. 10:6-2(c)).  As to the first element, a public entity, such as defendant, may be held liable under the NJCRA or §1983 "only if it causes harm through 'the implementation of "official municipal policy."'"  Winberry Realty P'ship v. Borough of Rutherford, 247 N.J. 165, 190-91 (2021) (quoting Lozman v. City of Riviera Beach, 585 U.S. 87, 95 (2018)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (holding "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort").

In other words, an entity is "not legally accountable solely because of the acts of one of its employees—acts that do not represent official policy—under the doctrine of respondeat superior."  Winberry Realty, 247 N.J. at 191.  As the Third Circuit explained, "[l]iability is imposed 'when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the "moving force" behind the constitutional tort of

A-2479-22

one of its employees.'"  Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991)).

In her complaint, plaintiff alleged that defendant denied her "equal rights and protections that are available to all" by denying her children the right to "[a] free public education."  However, as the judge pointed out and plaintiff conceded, plaintiff's children were not denied the right to free public education because they remained in the Elizabeth public school district free of charge and plaintiff, in fact, withdrew her OAL petition.  Without alleging a specific right that has been infringed, plaintiff cannot bring a civil action under the NJCRA.  Accordingly, the judge did not err in dismissing the NJCRA claim.

Moreover, we are satisfied the judge did not abuse his discretion by denying plaintiff's cross-motion pursuant to Rule 4:9-1 to amend the complaint to include the individual Board members.  Under Rule 4:9-1, "a party may amend a pleading . . . by leave of court which shall be freely given in the interest of justice."  Nonetheless, "[a]mendment remains a matter addressed to the court's sound discretion."  Johnson v. Glassman, 401 N.J. Super. 222, 247 (App. Div. 2008) (citing Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998)).

"Ordinarily, dismissal for failure to state a claim is without prejudice, and the court has discretion to permit a party to amend the pleading to allege additional facts in an effort to state a claim." Cona v. Twp. of Wash., 456 N.J. Super. 197, 214 (App. Div. 2018); see also Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009) (concluding that trial court correctly dismissed plaintiff's complaint for failing to state claims upon which relief could be granted but "erred by dismissing the complaint with prejudice" without providing "reasons for departing from th[e] general rule"). However, when "plaintiffs have not offered either a certification or a proposed amended pleading that would suggest their ability to cure the defects" in their complaint, Johnson, 401 N.J. Super. at 246, or "an amendment would be a 'futile' and 'useless' endeavor,'" Cona, 456 N.J. Super. at 214 (quoting Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006)), then leave to amend may be denied.

Here, because the amended complaint did not cure the defects we have discussed and did not properly articulate a cause of action under the NJCRA, we agree with the judge that any amendment would have been futile. To the extent we have not addressed a particular argument, it is because we deem the argument to lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

A-2479-22

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2479-22